**CITY OF ARLINGTON, Texas and the License and Amortization Appeal Board of the City of Arlington, Appellants,**

v.

**CENTERFOLDS, INC. and Steven William Craft, Appellees.**

No. 2–06–080–CV.

Court of Appeals of Texas, Fort Worth.

June 14, 2007.

Rehearing Overruled July 12, 2007.

---

Fanning, Harper & Martinson, Thomas P. Brandt, Joshua A. Skinner, and John F. Roehm III, Dallas, for Appellants.

Quaid & Quaid, L.C., Charles Joseph Quaid, Dallas, for Appellees.

Panel B: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

This is an appeal from the trial court's summary judgment in favor of appellees Centerfolds, Inc. and Steven William Craft on procedural due process grounds with regard to the denial of appellees' application for a location exemption for a sexually oriented business (SOB) in Arlington, Texas. In four issues, appellants the City of Arlington, Texas and the License and Amortization Appeal Board of the City of Arlington contend that (1) this case should be dismissed because appellees do not have standing, (2) appellees waived their due process claims by failing to raise them at the hearing before the Board, (3) appellees failed to establish their due process claims, and, alternatively, (4) a genuine issue of material fact precludes summary judgment. We affirm.

### Background Facts

Appellee Craft is Vice President of appellee Centerfolds, which leases property

on West Division Street in Arlington. Since 1988, Centerfolds has operated several SOBs at that location. In July 2003, Centerfolds was operating an SOB named La Bare at the location, which featured male dancers and catered to female patrons. In July and August 2003, appellees closed La Bare and began renovating the premises to start a new SOB, Chicas Locas, which featured female dancers and catered to mostly Hispanic male customers. Centerfolds did not open Chicas Locas to customers until late August 2003.

In 1992, the City passed an ordinance prohibiting the operation of an SOB within 1,000 feet of a residence, thus making Centerfolds' operation a nonconforming use under the new ordinance. ARLINGTON, TEX., CODE, SEXUALLY ORIENTED BUSINESS ORDINANCES art. III, §§ 3.01–.02(A) (2004). SOBs that were already in operation when the ordinance was passed and that are considered nonconforming uses under the ordinance are allowed to apply for an exemption to the location restrictions each year. *Id.* § 3.02(A). The building in which Chicas Locas is located is within 1,000 feet of two residential areas.

To obtain a location exemption, an SOB must prove its entitlement to the exemption by a preponderance of the evidence at a hearing before the Board. *Id.* art. IV, § 4.11. Section 4.11(E) of the ordinance provides that the Board may grant the exemption if it makes the following findings:

1. That the location of the [SOB] will not have a detrimental effect on nearby properties or be contrary to the public safety or welfare;

2. That the location of the [SOB] will not downgrade the property values or quality of life in the adjacent areas or encourage the development of urban blight;

3. That the location of the [SOB] in the area will not be contrary to any program of neighborhood conservation, nor will it interfere with any efforts of urban renewal or restoration; and

4. That all other applicable provisions of [the SOB ordinance] will be observed.

*Id.* § 4.11(E). Beginning "a couple of years" after the passage of the new SOB ordinance, Centerfolds applied for, and the Board granted, such an exemption each year.

On September 22, 2003, after Centerfolds had converted its business to Chicas Locas from La Bare, appellees applied to renew their location exemption for 2004. The chief of police denied the application because of the club's proximity to a residential area. After a hearing at which appellees and the City both presented evidence, the Board denied the exemption application on January 20, 2004. Appellees appealed the Board's decision to the district court. *Id.* § 4.09.

Appellants filed a motion for partial summary judgment contending that the Board's decision must be affirmed based on the substantial evidence standard of review.[1] In their response, appellees contended that the Board's decision could not be upheld on substantial evidence grounds

---

1. *See id.* § 4.09(B) ("The substantial evidence standard of review shall apply to such appeal."). The substantial evidence standard of review is deferential; it is generally described as a "limitation on the power of the courts to overturn a decision of an administrative agency .... [unless it] is illegal, arbitrary or capricious; that is, that it is not reasonably supported by substantial evidence." *Bd. of Firemen's Relief & Ret. Fund Trs. of Houston v. Marks*, 150 Tex. 433, 242 S.W.2d 181, 182–83 (1951); *Peaster ISD v. Glodfelty*, 63 S.W.3d 1, 5 (Tex.App.-Fort Worth 2001, no pet.).

because they were denied procedural due process during the hearing before the Board. Specifically, appellees contended, among other things, that they were not allowed to cross-examine members of the public who made remarks to the Board in a public comment session held before the hearing, that Board members impermissibly considered the unexamined public comment in deciding to deny appellee's request for a location exemption, that appellees were denied full and effective cross-examination of witnesses at the hearing because they were not allowed to re-examine witnesses after Board members asked questions of them, and that the Board failed to file required findings of fact and conclusions of law in support of its decision.

The trial court denied appellants' motion for summary judgment because of the procedural due process concerns; however, because appellees had failed to file their own motion for summary judgment, the trial court could not grant them the relief they had asked for in their response: for the case to be remanded to the Board for a new hearing. Appellees then filed a motion for summary judgment raising the same procedural due process grounds.[2] The trial court granted the summary judgment motion without specifying any particular grounds, vacated the Board's order denying appellants' application for a location exemption for 2004, and remanded the case to the Board for a trial de novo on appellees' application for a location exemption.

## Standard of Review

A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.

See Tex.R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex.2004). Questions of law are appropriate matters for summary judgment. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999); *Westchester Fire Ins. Co. v. Admiral Ins. Co.,* 152 S.W.3d 172, 178 (Tex. App.-Fort Worth 2004, pet. filed) (op. on reh'g). Summary judgment is proper in an appeal to the trial court pursuant to the substantial evidence review because the only issue before the trial court is a question of law. *In re Edwards Aquifer Auth.,* 217 S.W.3d 581, 587 (Tex.App.-San Antonio 2006, orig. proceeding); *Parks v. Harris County Civil Serv. Comm'n,* 225 S.W.3d 246, 250 (Tex.App.-El Paso, 2006, no pet.); *Arrellano v. Tex. Employment Comm'n,* 810 S.W.2d 767, 770–71 (Tex.App.-San Antonio 1991, writ denied).

## Standing

In their first issue, appellants contend that appellees lack standing to challenge the Board's decision because they did not fulfill the requirements to apply for an exemption. According to appellants, under section 3.02 of the City's SOB ordinance, only an SOB that has "continuously operated" has standing to apply for an exemption under section 4.11. Although the City did not plead the matter at trial, it contends that it may raise the matter for the first time on appeal because standing implicates the trial court's subject matter jurisdiction.

**2.** Appellees acknowledge in their brief that they advanced the no-findings-of-fact ground only in the alternative; therefore, our review of the trial court's decision is limited solely to the cross-examination issues.

### Applicable Law

A plaintiff must have both standing and capacity to bring a lawsuit. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex.2005); *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001). The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome. *Lovato*, 171 S.W.3d at 848. Standing, therefore, focuses on *who* may bring an action, *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex.2001); *In re Guardianship of Archer*, 203 S.W.3d 16, 23 (Tex.App.-San Antonio 2006, pet. denied), and is concerned with whether the claimant has a particularized injury distinct from that suffered by the general public. *Bland ISD v. Blue*, 34 S.W.3d 547, 555–56 (Tex.2000); *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 497 (Tex. App.-Texarkana 2005, no pet.).

Standing requires that there be a real controversy between the parties that will actually be determined by the judicial declaration sought. *Lovato*, 171 S.W.3d at 849. This means that litigants must be "properly situated to be entitled to [a] judicial determination." *Id.* (quoting 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3531, at 338–39 (2d ed.1984)). Without standing, a court lacks subject matter jurisdiction to hear the case. *Id.; Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex.1993). Thus, the issue of standing may be raised for the first time on appeal. *Lovato*, 171 S.W.3d at 849.

The issue of capacity, however, "is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate." *Id.* at 848 (quoting 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, &

MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1559, at 441 (2d ed.1990)). Our supreme court has distinguished between standing and capacity, stating that "[a] plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). In contrast to a challenge to standing, a challenge to a party's capacity must be raised by a verified pleading in the trial court. TEX.R. CIV. P. 93(1)-(2); *Lovato*, 171 S.W.3d at 849.

### Analysis

Section 3.02(A) of the City's SOB ordinance provides that

> [a]ny [SOB] lawfully operating prior to the effective date of Ordinance No. 92–117 [the SOB ordinance], that is in violation of Section 3.01 [setting forth the zoning and location restrictions for SOBs] *and has continuously operated and maintained* a valid and effective [SOB] *license at such location*, shall be deemed a nonconforming [SOB].... Any nonconforming status shall terminate if the [SOB] voluntarily *discontinues operating* as a[n][SOB] *or abandons* such use at such location for thirty (30) days or more, or if there has been a final administrative determination ... denying an application for such business at such location without further appeal, or a judicial determination upholding such denial.

ARLINGTON, TEX., CODE, SEXUALLY ORIENTED BUSINESS ORDINANCES art. III, § 3.02(A) (emphasis added). According to appellants, an SOB that has failed to continuously operate is not entitled to request an exemption from the location restrictions.

The evidence at the Board hearing showed that appellees had shut down La Bare for at least part of July and August 2003 for the purpose of renovating the building and hiring new staff in preparation for opening Chicas Locas. It is undisputed that the club was not open for business during that time. Appellants contend that this means the club was not continuously operated and therefore lost its nonconforming use status, thereby losing standing to pursue an exemption and maintain this subsequent appeal. Appellees, however, contend that although the club was not open for business during parts of July and August, they were nevertheless continuing to operate an SOB at that location by renovating the club, hiring new employees, and otherwise preparing for the changed format. They also contend that whether or not they were in continuous operation under the statute is not a matter of standing but of capacity.

■ We agree with appellees' latter contention. We need not interpret whether the club here was "continuous[ly] operated" under the facts as applied to this ordinance.[3] It is clear that here appellees are personally aggrieved by the Board's decision; regardless of whether they were qualified to apply for the exemption under the ordinance, they did file an application, which was rejected on the ground that the SOB violated the ordinance's location restrictions, not because the club was no longer considered a nonconforming use by virtue of its failure to continuously operate. Section 3.02 refers to the nonconforming use designation as a "status," which speaks more to appellees' *authority* or *capacity* to challenge the Board's decision rather than whether appellees have a justiciable interest in the controversy. If the

City had alleged that the exemption should be denied on the ground that appellees had not continuously operated as required under section 3.02, and if the Board had rejected the application on that basis, appellees would have had standing to appeal that decision because they would have been personally aggrieved by it, i.e., they would not have been able to continue to operate their business. Here, the result is the same: the Board's decision bars appellees from operating their business. Therefore, we conclude and hold that whether the club was continuously operated does not affect appellees' standing to challenge the Board's decision here; rather it is an issue of capacity that appellants should have raised as an affirmative defense in their pleadings below. *See* Tex.R. Civ. P. 93(1)-(2); *Lovato,* 171 S.W.3d at 849; *Coastal Liquids,* 46 S.W.3d at 884 (holding that whether foreign corporation's failure to properly register with Secretary of State barred corporation's claim was issue of capacity rather than standing). We overrule appellants' first issue.

### Preservation of Error

In their second issue, appellants contend that appellees waived their procedural due process claims by failing to assert them before the Board. Appellees argue that they were not required to preserve their claims before the Board, but even if they were, they did so.

### Applicable Facts

As grounds for their summary judgment motion in the trial court, appellees alleged that they were denied due process of law in the proceedings before the Board because

---

**3.** *Accordingly,* we also need not decide appellants' contentions regarding the construction of section 3.02.

(A) [they were] denied cross[-]examination of witnesses and evidence in two (2) particulars: (1) individual citizens were allowed to give opening statements which were reportedly not to be part of the underlying administrative record or evidence being considered by the Board (and therefore not subject to cross[-]examination) but such testimony and comments by such citizens were specifically referenced by Board members as part of the basis for their denial of the exemption; and (2) the refusal of the [administrative law judge (ALJ)] to allow further examination or cross[-]examination of witnesses after the completion of questioning of such witnesses by the very Board members who were sitting in judgment; and (b) [sic] the [Board] fail[ed] to make findings of fact and conclusions of law. [Citations omitted.]

The hearing took place before the Board, with an ALJ, who was not a member of the Board, presiding. The first part of the hearing consisted of commentary from members of the general public who attended the hearing. According to section 5.02(A) of the Board's rules of procedure, this commentary was not to be considered as evidence for purposes of the hearing. License & Amortization Appeal Bd. Rules of Procedure § 5.02(A) (Dec. 16, 2002). Six citizens voluntarily spoke during the public comment portion of the hearing, and the City later called three of these as witnesses during the evidentiary portion of the hearing. All six were opposed to appellees' being granted an exemption. The record shows that some of the public comment was met with audible applause.

After the first person spoke during the public comment part of the hearing, the following exchange occurred:

[APPELLEES' COUNSEL]: It's my understanding I'm not allowed to cross[-]examine people that—

[ALJ]: No. This is not evidence.

[APPELLEES' COUNSEL]: I just wanted to make sure.

After the public comment section of the hearing concluded, the evidentiary part of the hearing began. Appellees, who had the burden to prove entitlement to the exemption by a preponderance of the evidence, presented their witnesses first. ARLINGTON, TEX., CODE, SEXUALLY ORIENTED BUSINESS ORDINANCES art. III, § 4.11(G); License and Amortization Appeal Bd. Rules of Procedure § 5.01. The ALJ, in keeping with the Board's written procedures, allowed the City, through its counsel, to cross-examine each witness; he also allowed the parties to redirect and recross. *See* License and Amortization Appeal Bd. Rules of Procedure § 5.02(D)-(G). However, after both sides were finished, the ALJ also allowed the Board members themselves to ask questions of the witnesses.[4] However, after the Board members questioned the witnesses, the ALJ refused to allow appellees' counsel to further question witnesses to clarify matters raised in response to the Board's questions.

---

**4.** Section 5.02(M) of the Board's rules of procedure provides that "Board members may ask questions of the *participants* in the hearing at any point in the proceedings." License and Amortization Appeal Bd. Rules of Procedure § 5.02(M). But "participants" is not defined, so it is unclear to whom this term refers: to the parties, attorneys, or witnesses only, or to any person participating in the proceedings? If we assign "participants" its ordinary meaning of "one that participates" in the proceedings, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1646 (2002), then presumably it applies even to those citizens who participate in the public comment section of the hearing, even though that public comment is supposed to be nonevidentiary in nature and, therefore, not for consideration by the Board.

Specifically, after the evidentiary part of the hearing began and after several Board members had questioned one of appellees' witnesses, appellees' counsel asked if he could clarify some matters with that witness:

[ALJ]: Any further questions from the Board? The witness may be excused. Thank you.

[APPELLEES' COUNSEL]: Some questions, some of the things I—

[ALJ]: I beg your pardon?

[APPELLEES' COUNSEL]: Because of some of the questions [from the Board], I have some additional questions for the witness if that's appropriate to clarify.

[ALJ]: I don't think that's necessary for this witness. You've had two opportunities to examine the witness.

[APPELLEES' COUNSEL]: I'd also like the record to reflect that the testimony was coming from the general public in the answer to some of the questions.[5]

[ALJ]: The Board cannot accept testimony from the general public.

My instructions to it will be that they accept only testimony that I've admitted into evidence.

At the conclusion of testimony from another witness, appellees' counsel stated,

[APPELLEES' COUNSEL]: Just a clarification. I assume all witnesses,

once the Board asks questions, we're not asking further questions.

[ALJ]: Right.

[APPELLEES' COUNSEL]: Thank you.

## Analysis

Ordinarily, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. TEX.R.APP. P. 33.1(a); *see also* TEX.R. EVID. 103(a)(1). Here, appellees raised their due process arguments in the trial court; however, appellants claim that appellees waived them by failing to raise them at the Board hearing.

■ In appeals from state agency contested case hearings under the Administrative Procedure Act (APA), an appellant waives any arguments not set forth in a timely motion for rehearing except for agreed appeals and appeals from decisions in emergency cases. TEX. GOV'T CODE ANN. §§ 2001.144(a)(3)-(4), .145(a) (Vernon 2000); *Entergy Gulf States, Inc. v. Pub. Util. Comm'n*, 173 S.W.3d 199, 210 (Tex. App.-Austin 2005, pet. denied). This requirement ensures that the aggrieved party has exhausted all administrative remedies before seeking judicial review of the agency's decision. *Lindsay v. Sterling*, 690 S.W.2d 560, 563 (Tex.1985); *Brown v. Tex. Dep't of Ins.*, 34 S.W.3d 683, 687

---

**5.** It is not clear from the record whether testimony "was coming from the general public in the *answer* to some of the questions." [Emphasis added.] The record does show that Craft, who was not testifying at the time, volunteered an answer about whether nearby property was occupied; however, his answer did not appear to be related to anything said in the public comment section of the hearing. If a member of the public who was not a witness at the evidentiary part of the hearing volunteered testimony at that time, it is not shown in the record. However, counsel's comment for the record—made after requesting to ask additional questions of the witness after the individual Board members questioned that witness—can also be construed as a complaint that some of the Board members' questions appeared to presume facts stated in some of the citizens' remarks made during the public comment portion of the hearing.

(Tex.App.-Austin 2000, no pet.). The purpose of a motion for rehearing is to put the agency on notice as to the errors alleged by the party seeking judicial review. *Suburban Util. Corp. v. Pub. Util. Comm'n*, 652 S.W.2d 358, 364 (Tex.1983); *Brown*, 34 S.W.3d at 687.

■ But the APA applies only to *state agency* hearings; it does not govern hearings of the Board pursuant to the City's SOB ordinance. *See* TEX. GOV'T CODE ANN. §§ 2001.001, .003(7) (Vernon 2000 & Supp. 2006) (providing that the APA is meant to provide uniform procedures for state agencies, which are defined as parties with statewide jurisdiction that make rules or determine contested cases). The SOB ordinance does not provide for any rehearing by the Board; it provides only for an appeal from the Board's decision to the district court. ARLINGTON, TEX., CODE, SEXUALLY ORIENTED BUSINESS ORDINANCES art. III, §§ 4.08(B)-(C), 4.09. Thus, appellants exhausted all of the administrative remedies available to them before seeking judicial review of the Board's decision.

Moreover, appellees' counsel did seek confirmation from the ALJ that he would not be able to cross-examine members of the public who made remarks during the public commentary; he also requested to ask further questions of at least one witness after Board members had questioned that witness, and he also confirmed with the ALJ that he would not be able to ask follow-up questions of any other witnesses after similar questioning of that witness by the Board. It was clear that the ALJ understood appellants' concerns because he specifically instructed the Board that the public commentary was not to be considered as evidence. *See* TEX.R.APP. P. 33.1(a)(1)(A); *cf. Hassan v. Greater Houston Transp. Co.*, No. 01–05–00494–CV, 2007 WL 495242, at *4 (Tex.App.-Houston [1st Dist.] Feb. 15, 2007, no pet.

h.) (holding that complaint about jury charge was preserved when trial court clearly understood complaint and ruled on it). Section 5.02(A) of the Board's rules of procedure specifically provides that public comment will be taken before a Board hearing, and those same procedures do not provide for applicants to challenge the Board's procedures. License and Amortization Appeal Bd. Rules of Procedure § 5.02(A). Accordingly, we hold that appellants did not waive the contentions in their motion for summary judgment that the Board's decision could not be upheld because of due process concerns related to the public comment portion of the Board hearing and the ALJ's refusal to allow appellants to requestion witnesses after the Board members asked questions of those witnesses.

Accordingly, we hold that appellees did not waive their complaints upon which the trial court granted them summary judgment. We overrule appellants' second issue.

### Procedural Due Process

In their third issue, appellants claim that appellees failed to establish their entitlement to summary judgment on their due process claims because (1) they had no liberty or property interest in the operation of an SOB in the specific location, (2) they were given a sufficient opportunity to cross-examine all adverse witnesses, and (3) they cannot prove harm.

**Whether Appellees Have Property or Liberty Interest Entitling Them to Procedural Due Process**

■ The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no state may deprive any person of life, liberty, or property, without due process of law. U.S. CONST. amend. XIV. Procedural due process requires that a governmental entity's

deprivation of life, liberty, or property, even if consistent with substantive due process, must "be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987). The first inquiry in any due process claim under the United States Constitution is whether the plaintiff has been deprived of a protected property or liberty interest. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999).

Appellants argue that appellees had no constitutionally protected liberty or property interest requiring procedural due process by virtue of their nonconforming use status; in other words, because appellees could validly operate only by virtue of a location exemption, they were not entitled to due process protections in the exemption hearing. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460–62, 109 S.Ct. 1904, 1908–09, 104 L.Ed.2d 506 (1989) (holding that protected liberty interests may arise from the Due Process Clause itself or the laws of the states and that a state creates a protected liberty interest by placing substantive limits on official discretion, such as "mandating the outcome to be reached upon a finding that the relevant criteria have been met"); *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex.1972) ("[P]roperty owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made.").[6]

■ However, appellants do not address appellees' reliance on *Lewis v. Metropolitan Savings and Loan Association*—a Texas Supreme Court case holding that an administrative decision fails for arbitrariness if it does not comply with procedural due process—rather than the Due Process Clause. 550 S.W.2d 11, 16 (Tex.1977). In *Lewis*, the appellees contended that the appellant, the Savings and Loan Commissioner, denied them procedural due process during an administrative hearing by excluding "competent and material evidence" proffered by the appellees. *Id.* at 12. The Commissioner contended that the administrative decision could not be considered arbitrary if it was supported by substantial evidence, so any procedural irregularities were irrelevant as long as substantial evidence existed to support his decision. *Id.* at 13.

■ The supreme court recognized that there can be evidence in the administrative record that qualifies as substantial, yet the parties may have also been denied due process and the rudiments of fair play in the conduct of the proceeding. *Id.* at 13–14. The court also noted that in that case in particular and in similar administrative cases in which the decision maker is also a fact-finder, it was difficult or impossible to tell whether the improper exclusion of evidence (and, hence, the denial of due process) affected the result of the proceeding. *Id.* at 15. Accordingly, the court concluded and held that "arbitrary action of an administrative agency cannot stand [regardless of whether there is substantial evidence supporting the agency's decision]. There is arbitrariness where the treatment accorded parties in the administrative process denies them due process of law." *Id.* at 16.

Under Texas law regarding administrative hearings, appellees in this case were entitled to procedural due process during

---

6. *See also Hang On III, Inc. v. Gregg County*, 893 S.W.2d 724, 726 (Tex.App.-Texarkana 1995, writ dism'd by agmt.) (citing *Benners* for proposition that landowner has no constitutionally protected right to operate an SOB); *Smith v. Copeland*, 787 S.W.2d 420, 422 (Tex. App.-San Antonio 1990, no writ) (holding same); *City of Houston v. MEF Enters., Inc.*, 730 S.W.2d 62, 63 (Tex.App.-Houston [14th Dist.] 1987, no writ) (holding same).

the administrative hearing before the Board. *See id.* at 13; *J.B. Adver., Inc. v. Sign Bd. of Appeals of the City of Carrollton, Tex.*, 883 S.W.2d 443, 448–49 (Tex. App.-Eastland 1994, writ denied); *Closs v. Goose Creek Consol. ISD*, 874 S.W.2d 859, 874 (Tex.App.-Texarkana 1994, no writ). Accordingly, we reject appellants' argument that the Board's decision was not subject to reversal for failure to comply with procedural due process.

## Denial of Opportunity to Fully Examine Witnesses

Appellants next contend that appellees had no due process right to cross-examine or re-examine witnesses after the Board members individually questioned them upon the completion of appellants' and appellees' direct and cross-examinations.

■ At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *see Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex.1995). Exactly what process is due in a given situation is measured by a flexible standard that depends on the practical requirements of the circumstances. *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902; *see Than*, 901 S.W.2d at 930. The flexible standard balances the following three factors: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation of a constitutionally protected interest under the procedures used and the likely benefit of any additional procedures; and (3) the government's interest, including the fiscal and administrative burdens that additional procedural requirements would entail. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903; *see Than*, 901 S.W.2d at 930. "Basic due process requires that when a decision maker is called upon to make a decision grounded on evidence, the parties involved should be provided fair notice and a meaningful opportunity to present their evidence." *United Copper Indus., Inc. v. Grissom*, 17 S.W.3d 797, 805 (Tex.App.-Austin 2000, pet. dism'd as moot).

■ In administrative proceedings, due process requires that parties be accorded a full and fair hearing on disputed fact issues. *City of Corpus Christi v. Pub. Util. Comm'n*, 51 S.W.3d 231, 262 (Tex. 2001); *Hammack v. Pub. Util. Comm'n*, 131 S.W.3d 713, 731 (Tex.App.-Austin 2004, pet. denied). At a minimum, it requires that the "rudiments of fair play" be observed. *Hammack*, 131 S.W.3d at 731 (quoting *State v. Crank*, 666 S.W.2d 91, 94 (Tex.1984) (op. on reh'g)). This is not to say that administrative hearings must measure up to judicial standards, but even they cannot be arbitrary or inherently unfair. *City of Corpus Christi*, 51 S.W.3d at 262 (citing *Bexar County Sheriff's Civil Serv. Comm'n v. Davis*, 802 S.W.2d 659, 664 (Tex.1990), *cert. denied*, 502 U.S. 811, 112 S.Ct. 57, 116 L.Ed.2d 34 (1991)). Moreover, the Board's own rules of procedure provide that the City may cross-examine any witnesses called by the applicant and that the applicant, in turn, may cross-examine any witnesses called by the City. License and Amortization Appeal Bd. Rules of Procedure § 5.02(E), (G).

■ "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970). Cross-examination is a safeguard essential to a fair trial and a cornerstone in the quest for truth; longstanding principles of our jurisprudence recognize the right and necessity of full and complete cross-examination. *Davidson v. Great*

*Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314 (Tex.1987). The right to cross-examine a witness is a substantial one, and it is error to so restrict it as to prevent the cross-examining party from going fully into all matters connected with the examination in chief. *Id.* "The right to cross[-] examine adverse witnesses *and to examine and rebut all evidence* is not confined to court trials, but applies also to administrative hearings." *Richardson v. City of Pasadena*, 513 S.W.2d 1, 4 (Tex.1974) (emphasis added).

■ In addition, the limitation of redirect can limit a party's rights:

Re-direct is intended to permit the witness to explain answers given on cross-examination and to amplify new material elicited for the first time. The intent is to prevent the jury from being left with a false and incomplete picture created by the latitude counsel is afforded on cross-examination and counsel's ability to use leading questions. It is sometimes said that re-direct examination for this purpose is a matter of right.

*Sims v. Brackett*, 885 S.W.2d 450, 455 (Tex.App.-Corpus Christi 1994, writ denied).

■ The Texas Rules of Evidence give the trial court "reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to [among other things] (1) *make the interrogation and presentation effective for the ascertainment of the truth ....*" TEX.R. EVID. 611(a) (emphasis added).[7] A fair opportunity for the parties to prove their respective cases is essential to an administrative hearing comporting with due process. *J.B. Adver.*, 883 S.W.2d at 449. Denial of such an opportunity affects the ability of the fact-finder to ascertain the truth of the dispute. *See* TEX.R. EVID. 102 (providing that the rules of evidence "shall be construed to secure fairness in administration, ... to the end that the truth may be ascertained and proceedings justly determined"); *Sims*, 885 S.W.2d at 455.

■ Here, appellees were afforded an opportunity to perform direct examinations of their own witnesses and to cross-examine the City's witnesses. However, appellees were denied the right to redirect or recross witnesses after the Board members themselves had asked those witnesses questions. Some of the Board members' questions raised matters not explored by either party on direct examination or cross-examination; however, the ALJ refused to allow appellees to ask further questions even after new matters were raised by Board members.

For example, after an extensive direct, cross, redirect, and recross of Al Lozano, the general manager of Chicas Locas, the following exchange occurred when the Board was allowed to question Lozano:

Q. Okay. Who is Alan Fitzgerald?

A. One of the managers.

Q. Is he bilingual?

A. No, he's not.

Q. Were you on duty on December 19th about midnight, when they had the big fight in the parking lot?

A. No, I was not.

7. The Board's rules of procedure provide that "[t]hese Rules of Procedure shall govern the proceedings of the Board in all cases. Robert's Rules of Order Revised shall govern only when these rules are silent." License and Amortization Appeal Bd. Rules of Procedure § 2.04. The rules do not incorporate the Texas Rules of Evidence; however, they do address certain evidentiary matters by providing that the public comments are not evidentiary, that a party's evidentiary documents will not be admitted except for good cause unless timely filed according to the Board's rules, and that certain evidence may be excluded upon a party's motion. *Id.* §§ 4.04, 5.02(A), 5.03.

Q. Alan Fitzgerald was the manager on duty, right?

A. Yes.

Q. You're aware, I'm sure, that under the Ordinance it clearly states that the licensee, which you know, is the manager, also, who represents the licensee, has to be fully in possession and control of the premises and activities that go on at all times.

If you've got a 99 percent male, 80 percent Hispanic patronage, and you[r] manager at midnight doesn't speak Spanish, how do you maintain control?

A. He's not the only manager. We don't—we have more than one manager at all times in a night shift.

Q. But ultimately, somebody is in control.

He's in charge, right?

I mean, you know, you can't—somebody has got to be the man.

A. We delegate different responsibilities for different managers. I don't have one that's just totally over the night shift.

Q. Well, who's in charge of parking lot fights?

A. We don't have anybody in charge of parking lot fights.

Q. But, you see my point. You had an issue there, you've got a bad problem with—the police had to respond to it, you had a fight in the parking lot.

And nobody was real sure what happened because one of the reasons is, the manager couldn't communicate with the customers who were having the fracas.

Would that be an accurate observation?

A. Yes.

The fight referenced by the Board member was not raised by either party in their direct or cross-examinations. Other Board members asked Lozano questions about matters not raised in either the direct or cross-examinations.

In addition, after appellants' final re-cross of Lozano but before the Board members' questioning, the ALJ stated that he was going to "limit recross and redirect to issues that were explicitly raised in the previous testimony." However, the ALJ placed no such limitations upon the Board members' questions.

Another example of this limitation occurred after appellees and appellants finished questioning Dave Hardin, appellees' property values expert; the Board members then questioned him extensively. After Hardin testified about the club's lack of impact on property values, Board member Knezek noted that very few of the properties that Hardin had examined in determining that the club did not have an impact on surrounding property values had increased in value; thus, it appeared that the area around the club was stagnant and that the operation of the club could have no effect on surrounding property values. Hardin responded, "Oh no, ... I wouldn't form that conclusion, no, ma'am. It could—you could have a stagnant area and an adult entertainment facility actually harm the area. You sure could." When Board member Knezek asked if that meant that the commercial area was "on its way down," Hardin responded that, yes, the appraisal board had reduced values on all commercial properties in the area on which the owners had protested their appraised values.

Another Board member quizzed Hardin about whether lights and noise from the club could be seen from a nearby residential property. The only reference to noise made before this question was by two citizens during the nonevidentiary public comment portion of the hearing. Hardin answered that as to lights, "I would think

you could, yes, sir." But with respect to noise, he said he wouldn't know how to answer that. Finally, a third Board member got Hardin to admit that the appraised value data he had testified about would apply solely to La Bare since appraised values for surrounding properties had been set before Chicas Locas was opened that year. After the Board's questioning of Hardin, appellees' counsel made his initial request to ask additional questions for clarification purposes, which the ALJ denied.

The tenor of the Board members' questions to these two witnesses was, at times, confrontational, as if the Board members had placed themselves in an adversarial role, conducting cross-examination instead of neutrally gathering information to assist in their fact-finding role. *See Tex. State Bd. of Med. Exam'rs v. Nacol,* 696 S.W.2d 687, 688 (Tex.App.-Beaumont 1985, writ ref'd n.r.e.) (holding that Board of Medical Examiners' decision was "made upon unlawful procedure" because, among other things, "[t]he Board acted like prosecutors rather than fact[-]finders and, in voting, used the word 'guilty' to the allegations, rather than 'true.' "). Although the cases involving due process rights speak mostly to the preservation of the right of cross-examination, here, even though appellees were allowed to initially examine and cross-examine witnesses, they were deprived of the opportunity to fully explore all factual issues, including new issues, raised by the Board's questions during appellees' case-in-chief and the City's case-in-chief. *See J.B. Advertising,* 883 S.W.2d at 449 (holding that procedure by which the appellant's attorney was allowed to present questions to Chair of Board, who then referred those questions to the witness, denied the appellant the right to cross-examination of witnesses, thus denying appellant due course of law). Thus, the ALJ's refusal to allow appellees the opportunity to further redirect after the Board members' questions was in contravention of the truthseeking nature of an adversarial, evidentiary hearing and could have affected the fact-finder's ability to ascertain the truth in this case. We conclude and hold that the ALJ denied appellees the procedural due process that they were entitled to during the hearing by refusing to allow appellees to re-examine witnesses after the Board members had asked questions of those witnesses.

It is difficult if not impossible to gauge the effect of this restriction on the result of the proceeding because we do not know what testimony may have been elicited had the ALJ not denied appellees the right to re-examine the witnesses. *See Lewis,* 550 S.W.2d at 15–16. This difficulty is compounded by the difficulty in determining the effect, if any, of the public comment portion of the hearing on the Board members. Although the commentary is supposed to be nonevidentiary and the ALJ specifically told the Board not to consider it, at least one Board member asked a question of one of appellees' witnesses that could have been based on the public comments.[8]

■ Appellants point to the fact that the APA provides for public comment in state agency hearings. *See* Tex. Gov't Code Ann. § 2001.029. However, the APA does not apply here because the City and Board are not state agencies. *See id.* § 2001.003(7). In addition, this section of the APA applies to rulemaking hearings, not to contested case hearings. *Id.* § 2001.029. Rulemaking hearings are different from contested case hearings in that

---

8. One of the Board members asked Hardin about whether noise from the club could be heard from one of the residential properties near the club.

"rulemaking procedures maximize 'public participation in the rulemaking process,' a stated purpose of the APA, while contested case procedures limit participation to those directly affected by the dispute." *R.R. Comm'n of Tex. v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 77 (Tex.2003) (footnote omitted). Here, the Board hearing is akin to a contested case, which the APA defines as "a proceeding, . . . in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for an adjudicative hearing." TEX. GOV'T CODE ANN. § 2001.003(1). Thus, the APA does not support the practice of allowing unsworn public comment that is not subject to cross-examination in an adjudicative proceeding such as this one.

■ Based on our review of the entire record,[9] we hold that appellees' procedural due process rights were violated by the restrictions on appellees' full and complete examination of public commentators and witnesses at the hearing. The active, almost prosecutorial tone of the Board's comments, when combined with the inability to discern whether the Board impermissibly took into account public commentary that was not available for cross-examination, leaves the impression that the hearing was inherently unfair to appellees. Therefore, appellees conclusively proved that the Board's decision could not be upheld because it is arbitrary and capricious. *See Lewis*, 550 S.W.2d at 16. Because an arbitrary decision cannot be upheld even if supported by substantial evidence, there are no fact issues that would preclude

summary judgment and require a remand, as urged by appellees.[10] *See id.* We overrule appellants' third and fourth issues.

## Conclusion

Having overruled appellants' four issues, we affirm the trial court's judgment.

---

**9.** *See, e.g., Lewis,* 550 S.W.2d at 15 (stating that court's determination of whether administrative agency has discharged its duty to fully consider all surrounding facts and circumstances in fairness and justice to the competing parties "requires an examination of the whole record").

**10.** Our holding should not be read as determining whether substantial evidence exists to support the Board's ruling. The trial court's order simply provides appellees with another opportunity to present their evidence to the Board in a fair and adequate hearing.