COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-08-102-CV

 

 

MELISSA
KOHOUT                                                               APPELLANT

 

                                                   V.

 

CITY
OF FORT WORTH, TEXAS,                                             APPELLEES

DAVID LUNSFORD AND TOM 

EDWARDS

 

                                              ------------

 

           FROM THE 342ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








Melissa Kohout appeals from the trial court=s grant
of the plea to the jurisdiction filed by the City of Fort Worth, Texas (Athe City@), David
Lunsford (the City=s gas well inspector), and Tom
Edwards (the City=s senior gas drilling inspector)
on her claims that she was denied due process, equal protection, and the right
to petition her government.  In one
issue, Kohout argues that she has standing to assert that the City=s
actions violated her constitutional rights to petition her government, to due
process, and to equal protection. 
Because we hold that Kohout does not have standing to assert her claims,
we affirm.

THE ORDINANCE








In 2006, the City adopted Ordinance Number
16986-06-2006 (Athe Ordinance@),
amending the chapter of the City=s Code
of Ordinances regulating gas well drilling and production within the City.[1]  The Ordinance provides that any person
wishing to engage in gas production activities within the City must apply for
and obtain a gas well permit.[2]  Gas wells are characterized as rural, urban,
or high-impact.[3]  A Ahigh
impact permit,@ also referred to as a Ahigh
impact gas well permit,@ is required for any gas well
located within 600 feet of a protected use.[4]  A Aprotected
use@ is a
residence, religious institution, public building, hospital building, school,
or public park.[5]  The Ordinance defines the term Apublic
park@ as Aany land
area dedicated to and/or maintained by the City for traditional park-like
recreational purposes, but shall not include privately-owned amusement parks or
privately-owned or privately-managed golf courses.@[6]

A Arural
gas permit@ is required if the proposed
well will be located on an open space of at least twenty-five acres and if no
operations will be conducted within 1,000 feet of a protected use.[7]  For any other well, an Aurban
gas well permit@ is required.[8]

The Ordinance provides for two methods of
obtaining a high impact permit:  by
permission of the City Council or by waiver of protected uses.[9]  To obtain a high impact permit by waiver, a
permit applicant must obtain notarized waivers from all protected use property
owners within 600 feet of the proposed site.[10]  The applicant must file these waivers in the
county property records and must attach copies of them to the permit
application.[11]








At least ten days prior to filing the
application, the applicant must publish a notice in a newspaper of general
circulation.[12]  The notice must include a statement that
written waivers from all protected use property owners within 600 feet of the
proposed well site were filed in the county records.[13]  Also at least ten days prior to filing the
application, the applicant must post a sign at the premises for which the
permit has been requested.[14]  The sign must Asubstantially
indicate@ that a
high impact permit has been applied for.[15]  An applicant for an urban gas well permit
must also, at least ten days before filing an application, post a notice on the
proposed well site and insert a notice in a newspaper of general circulation
that an urban gas well permit has been requested.[16]

THE DISPUTE








On August 30, 2007, Chesapeake Operating, Inc. (AChesapeake@)
applied for an urban gas well permit. 
The City did not issue an approval or denial of the permit within thirty
days of the application.  Kohout asserts
in her brief that the application lapsed because the City did not act on
it.  The Ordinance requires the gas
inspector to review and approve or disapprove all permit applications within
thirty days of their filing.[17]  The Ordinance does not provide that the
failure of the inspector to timely approve or disapprove an application will
cause an application to lapse.[18]  It does, however, provide that the failure of
the gas inspector to review and issue a permit within the thirty days will not
cause the application to be deemed approved.[19]

The proposed well site was located on property
owned by Chesapeake Energy.  This
property was within 600 feet of the Trinity Trails, a hike-and-bike path along
the Trinity River.  Lunsford notified the
city council member in whose district the site was located that an application
had been submitted and was Afor an
Urban Class permit that will not require Council action.@  As required by the Ordinance, Chesapeake
posted a sign at the site and published a notice in the local newspaper that an
urban gas well permit had been applied for.








A group of concerned citizens took various steps
to protest the permit application, including holding a picnic by the proposed
drilling site, objecting at a public forum, and voicing their concerns at a
City Council meeting.  On September 26,
2007, Kohout, through her attorney, sent a letter to Lunsford objecting to the
permit application.  She based her
objection on the proposed well site=s
proximity to the Trinity Trails, which she contended is a public park.  An employee in the City=s legal
department responded by stating that the Trinity Trails is not a public
park.  The employee informed Kohout=s
attorney that the Trinity Trails are owned and maintained by the Tarrant
Regional Water District (Athe Water Board@) and
asserted that, accordingly, the proximity of the proposed well site to the
Trails would not constitute a basis for denying the permit.








On October 2, 2007, Lunsford sent an e-mail to a
number of city employees, including Edwards, stating that with respect to
Chesapeake=s permit application, A[t]he
rule is >No
Comment= to
anyone about the well . . . and accept no paper work (like a petition) from
anyone.@  On October 5, 2007, the Water Board executed
a waiver to Chesapeake.  On October 8,
2007, the City issued a high impact permit to Chesapeake.  When asked about the permit after its
issuance, a member of the City=s legal
department stated that Chesapeake originally had applied for an urban gas well
permit Abut met
all the technical requirements for a high impact well permit.@  She went on to say that A[t]he
sign posted on the property referenced an urban gas well permit, but Chesapeake
met the more restrictive permit requirements.@

On October 16, 2007, Kohout=s
attorney sent a letter to the City asking it to withdraw the permit.  He asserted that the permit was not granted
in accordance with the Ordinance because Chesapeake did not provide notice that
a high impact permit had been applied for. 
He further asserted that the issuance of the permit violated Kohout=s First
Amendment rights to express her opinion and to petition her government that
high impact drilling threatens the safety of people like her who use the
Trinity Trails.  He also contended that
the City=s
issuance of the permit without requiring Chesapeake to follow the Ordinance
gave Chesapeake special treatment.  The
City responded with a letter stating that the purpose of the Ordinance=s notice
provisions is to provide the public with notice of a pending application and
that Kohout had demonstrated that she had notice of Chesapeake=s
application to drill on the site.  The
City further stated that rather than showing favoritism, the issuance of a high
impact permit rather than an urban gas well permit meant that Chesapeake would
have to follow more restrictive procedures in drilling on the site.








PROCEDURAL HISTORY

Kohout then filed suit against the City, Lunsford,
and Edwards.  She sought a writ of
mandamus ordering the City to withdraw Chesapeake=s
permit.  She further sought a declaration
that the City=s Ordinance prohibits drilling
at the site; the Trinity Trails is a Apublic
park@; the
City improperly issued a drilling permit too close to the Trinity Trials in
violation of the Ordinance; and the City violated her right to petition the
government, her right to free speech, and her right to equal protection.  The City, Lunsford, and Edwards answered and
filed a plea to the jurisdiction challenging Kohout=s
standing to assert her claims, contending that she had not suffered any
particularized injury.  The trial court
granted the City=s plea.  Kohout now appeals.

ANALYSIS








In her only issue, Kohout argues that she has
standing to assert that the City=s
actions violated her constitutional rights to petition her government, to due
process, and to equal protection.  We
review de novo a trial court=s
determination on the question of standing.[20]  In our review, we construe the pleadings liberally
in the plaintiff=s favor.[21]  We may consider evidence presented to the
trial court when necessary to resolve the jurisdictional issues raised.[22]








Standing is a component of subject-matter
jurisdiction.[23]  For a plaintiff to have standing, there must
be a real controversy between the parties that will actually be determined by
the judicial declaration sought.[24]  Only a litigant who has suffered an injury
has standing.[25]  The alleged injury must be particular to the
plaintiff and distinct from that suffered by the general public.[26]  Thus, if Kohout has not suffered a
particularized injury, she has no standing, and the trial court did not have
jurisdiction over her claims.[27]

Kohout first argues that she was denied her right
under the federal and state constitutions to petition the government.[28]  With respect to this claim, the City argued
in its plea to the jurisdiction and argues on appeal that Kohout could not show
a particularized injury because she knew that the well would be drilled within
600 feet of the Trinity Trails.  Thus,
she was not injured by not knowing what designation the well would be given
because she could have and did petition the City to not allow drilling at the
site.

But this argument does not address Kohout=s
point.  Kohout=s
asserted particularized injury was the denial of her right to petition the
Water Board, not the City.  She argues
that because the City told her that no high impact gas well permit would be
required, she did not know that Chesapeake would be required to obtain either a
waiver of the requirement by the City Council after a hearing or a waiver from
the Water Board.  Consequently, she did
not have the opportunity to petition the Water Board and ask it to not give a
waiver.








As Kohout points out, under the City=s
argument, even though the City informed her that Chesapeake would not need the
Water Board=s consent to a waiver, she
nevertheless should have petitioned the Water Board to deny its consent.  If Kohout had known that Chesapeake would be
seeking a waiver from the Water Board, she argues, she could have petitioned
the Water Board to deny the waiver, and by the City affirmatively representing
to her that no high impact permit would be required (and thus no consent by the
Water Board would be required), the City denied her her constitutional right to
petition the Water Board.  We therefore
reject the City=s argument that Kohout=s
knowledge that a gas well would be drilled on the site satisfied her right to
petition the Water Board.








Nevertheless, we conclude Kohout was not injured
because the Ordinance upon which she relies never requires notice that waivers
will be sought; it only requires notice that waivers have already been obtained
and that an applicant is seeking a high impact permit based on those waivers.[29]  Kohout argues that the City violated her
right to petition the Water Board because it did not provide notice that the
proposed well would be a high impact well requiring a waiver by the Water
Board.  Had Chesapeake originally sought
a high impact permit by waiverCand
accordingly triggered the requirement that a notice of the application be
posted at the well site and in the newspaperCit would
have had to file the Water Board=s waiver
with its application.[30]  Furthermore, the notice placed in the
newspaper would have stated that the waivers from the relevant property owners
had already been obtained and filed in the real property records.[31]  Thus, if the City had required proper notice
that Chesapeake=s application was for a high
impact permit, then when Chesapeake placed the notice in the newspaper and at
the well site, giving Kohout the notice she says she was denied, at that time
the Water Board would have already executed a waiver.  Kohout would have been in the same position
she is in today with respect to petitioning the Water Board to refuse to grant
a waiverCasking
the Water Board to not do something it had already done.  Thus, Kohout suffered no injury to her right
to petition the Water Board by the City=s
failure to post a notice or to require Chesapeake to post a notice at the well
site that a high impact permit by waiver had been applied for.








Kohout also complains that the City
misrepresented to her that a high impact permit would not be required but then
told Chesapeake that it would have to obtain a waiver from the Water Board.  But the record reveals no injury to Kohout.








The City never specifically told Kohout that no
high impact permit would be required. 
The City informed Kohout that the Water Board rather than the City owned
and maintained the Trinity Trails, that the property therefore did not
constitute a Apublic park@ as
defined in the Ordinance, and that accordingly it could not use the proposed
well site=s proximity to a public park as
the basis for denying the permit.  And
without violating the Ordinance, the City could have subsequently changed its
mind and decided that the Trinity Trails was a public park despite the fact
that the City did not own or maintain the property, denied Chesapeake=s permit
application, and informed Chesapeake that it would need to reapply for a
different permit.  Or the City could have
declined to respond at all to Kohout=s
inquiry and told Cheseapeake to reapply for a high impact permit.  Chesapeake, then, would have needed to
resubmit the same application, this time with the Water Board=s waiver
attached.  It would also have to give
notice to the public that a high impact permit had been applied for and that it
had already obtained waivers from protected use property owners.  At no time before waivers are obtained does
an applicant have any obligation to notify the general public that a high
impact permit is being sought.[32]  Under these scenarios, once again, Kohout
would have received no notice prior to the Water Board=s
execution of a waiver.

Kohout implies an obligation on the part of the
City to inform her that it had decided that Chesapeake would need a high impact
permit, but no such obligation exists before waivers are obtained.[33]  It is the applicant, not the City, that must
provide notice to the general public, and at no point before waivers are
obtained from property owners does an applicant have an obligation under the
Ordinance to inform Kohout or any other member of the general public that it
will be seeking a waiver from property owners.[34]  Thus, the City had no obligation to give
Kohout any information on the subject, and even if it had misled her about its
intentions regarding the permit, it did not injure her because it did not
deprive her of information she was entitled to have.








Kohout argues that the City is judicially
estopped from denying its ownership of the Trinity Trails because of a position
it took in Schleuter v. City of Fort Worth.[35]  Judicial estoppel A>precludes
a party from adopting a position inconsistent with one that it maintained
successfully in an earlier proceeding.=@[36]  In Schleuter, the City sought an
injunction prohibiting the operation of a business it claimed was a sexually
oriented business on the ground that it was in violation of an ordinance
requiring such businesses to be more than 1,000 feet from a park or residential
neighborhood.[37]  The City took the position that Forest Park
is a park and submitted the affidavit of Richard Zavala, Jr., Director of the
City=s parks
and community services department, stating that the City Aowns
and/or maintains approximately 15.5 miles of hard surface paths along the
Trinity River.@[38]  The trial court granted the injunction on the
ground that the business violated the ordinance because it was within 1,000
feet of a residential neighborhood.[39]








Even assuming that these 15.5 miles are a part of
the Trinity Trails and that the City still owns them, the affidavit is not
clear that the portion of the Trinity Trails owned by the City is the same part
of the Trinity Trails that falls within 600 feet of the drill site.  Further, because in Schleuter it was
undisputed that the business was within 1,000 feet of a residential
neighborhood, this Court did not make any determination about whether the City
owned or maintained the property and expressly declined to address the issue of
what constituted a Apark@ under
the Ordinance.[40]  Thus, the doctrine of judicial estoppel does
not apply to estop the City from asserting that it does not own the property at
issue in this case.[41]

The City has never wavered in its assertion that
it did not own or maintain the part of the Trinity Trails in dispute.  It has only suggested through comments of the
City=s
attorney that after receiving Kohout=s
letters, the City gave some consideration to whether the property might
constitute a public park after all and that it decided to require a waiver from
the Water Board as a precaution.  As we
have stated, this decision did not trigger any obligation on the City=s part
to inform Kohout that it had changed its mind about the permit.  Thus, Kohout has suffered no particularized
injury with respect to her right to petition the government, and she has no
standing to assert the claim.[42]








Kohout also argues that she has standing to
assert an equal protection claim under article I, section three of the Texas
Constitution.[43]  She asserts that the City treated her
differently than Chesapeake because the City represented to her that the well
was not a high impact well, which led her to believe that no waiver from the
Water Board would be required, but at the same time the City told Chesapeake
that it needed such a waiver.  Kohout
also argues that the City owns property within 600 feet of the drill site, yet
granted the permit without requiring a waiver from the City, and thus it gave
Chesapeake special preferential treatment.








The equal protection clause of the Texas
Constitution requires that Aall
persons similarly situated should be treated alike.@[44]  The Texas Constitution does not require that
all classes of persons be treated the same.[45]  Rather, it requires that the law Aoperate
equally and uniformly upon all persons in similar circumstances.@[46]  A plaintiff asserting an equal protection
claim must establish that she Awas
treated differently than other similarly‑situated parties.@[47]

Here, Kohout=s
pleadings and the evidence considered by the trial court show that, at most,
she was treated differently than a permit applicant.  She has not shown that she was similarly
situated to Chesapeake.  Nor has she
shown that by the City failing to give her notice of Chesapeake=s intent
to obtain a waiver from the Water Board, the City treated her differently from
parties similarly situated to her.  Thus,
she has failed to show any injury to her rights under the equal protection
clause.  Accordingly, she has no standing
to assert such a claim.[48]








Kohout further argues that she has standing to
assert a due process claim under the Texas Constitution because the City failed
to give her notice that a high impact permit was being applied for, thus
depriving her of her right to petition the Water Board.[49]  Under the Ordinance, the City is not required
to give notice to anyone that a high impact permit is being applied for.[50]  Rather, the applicant must give such notice.[51]  And since any required waivers have already
been obtained by the permit applicant at the time the applicant gives that
notice, the City never gives anyone, including Kohout, notice before waivers
are obtained that a permit applicant will be seeking them.  Kohout has not demonstrated any
particularized injury, or any injury at all, as to her due process claim.  Accordingly, she does not have standing to
assert this claim.[52]  We overrule Kohout=s issue.

CONCLUSION

Having overruled Kohout=s issue,
we affirm the judgment of the trial court dismissing her claims for lack of
subject-matter jurisdiction.[53]

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  LIVINGSTON and
DAUPHINOT, JJ.

DELIVERED:  June 11, 2009











[1]Fort Worth, Tex.,
Ordinance 16986‑06‑2006 (June 13, 2006), amended by Fort
Worth, Tex., Ordinance 18449‑02‑2009 (Feb. 3, 2009).





[2]Id. ' 15-34(A).





[3]Id. ' 15-36.





[4]Id. '' 15-31(BB), 15-36(I).





[5]Id. ' 15-31(FF).





[6]Id. ' 15-31(HH).





[7]Id. ' 15-31(NN).





[8]Id. ' 15-31(SS).





[9]Id. ' 15-36(I)(A).





[10]Id. ' 15-36(I)(D).





[11]Id.





[12]Id.





[13]Id.





[14]Id.





[15]Id.





[16]Id. ' 15-36(II)(B).





[17]Id. ' 15-37(A).





[18]Id.





[19]Id. ' 15-37(B).





[20]Antonov v. Walters, 168 S.W.3d 901, 904
(Tex. App.CFort Worth 2005, pet.
denied).





[21]City of Argyle v. Pierce, 258 S.W.3d 674, 680
(Tex. App.CFort Worth 2008, pet.
dism=d).





[22]Id.; see also Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).





[23]DaimlerChrysler Corp. v.
Inman,
252 S.W.3d 299, 304B05 (Tex. 2008); M.D.
Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 708 (Tex. 2001).





[24]Tex. Ass=n of Bus. v. Tex. Air
Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).





[25]Lujan v. Defenders of
Wildlife,
504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (stating that to have standing,
a plaintiff must have suffered an injury that is concrete and particularized); Tex.
Air Control Bd., 852 S.W.2d at 444.





[26]Lujan, 504 U.S. at 560; Nootsie,
Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996)
(AA plaintiff has standing
when it is personally aggrieved@); Persons v. City of Fort Worth, 790
S.W.2d 865, 872 (Tex. App.CFort Worth 1990, no writ) (holding that appellant
was without standing to challenge city=s alleged violation of zoning ordinances because
he had not pled and proved that he suffered damages or injury other than as a
member of the general public); City of Fort Worth v. Groves, 746
S.W.2d 907, 912, 917 (Tex. App.CFort Worth 1988, no writ) (holding that resident
of a county had standing to challenge a lease entered into by the county under
open meetings act provision and as a taxpayer but that he did not have standing
to contest the lease with respect to special revenue bonds because he had not
shown damages to himself or any damages at all).





[27]See Lujan, 504 U.S. at 560; Groves,
746 S.W.2d at 917.





[28]See U.S. Const. amend. I;
Tex. Const. art. I, ' 27.





[29]Fort Worth, Tex.,
Ordinance 16986‑06‑2006 ' 15-36(I)(D) (amended 2009).





[30]See id.





[31]See id.





[32]See id.





[33]See id.





[34]Id.





[35]947 S.W.2d 920 (Tex. App.CFort Worth 1997, pet.
denied).





[36]Pleasant Glade Assembly
of God v. Schubert, 264 S.W.3d 1, 6 (Tex. 2008) (quoting 2 Roy W. McDonald & Elaine
G. Carlson, Texas Civil Practice ' 9.51 at 576 (2d ed. 2003)), cert. denied,
129 S. Ct. 1003 (2009).





[37]Schleuter, 947 S.W.2d at 923B24.





[38]Id. at 930.





[39]Id. at 923.





[40]Schleuter, 947 S.W.2d at 924.





[41]See Pleasant Glade
Assembly of God, 264 S.W.3d at 6.





[42]See Lujan, 504 U.S.
at 560; Nootsie, Ltd., 925 S.W.2d at 661; Groves, 746 S.W.2d at
917.





[43]See Tex. Const. art I, ' 3 (AAll free men, when they
form a social compact, have equal rights, and no man, or set of men, is
entitled to exclusive separate public emoluments, or privileges, but in
consideration of public services.@).





[44]Sanders v. Palunsky, 36 S.W.3d 222, 224B25 (Tex. App.CHouston [14th Dist.]
2001, no pet.).





[45]Beaumont Traction Co. v.
State,
57 Tex. Civ. App. 605, 122 S.W. 615, 617 (Galveston 1909, no writ).





[46]Id. (emphasis added); see
also Sanders, 36 S.W.3d at 224B25 (AThe principle of equal protection guarantees that
>all persons similarly
situated should be treated alike.=@).





[47]Sanders, 36 S.W.3d at 225
(emphasis added).





[48]See Nootsie, Ltd., 925 S.W.2d at 661; City
of Arlington v. Centerfolds, Inc., 232 S.W.3d 238, 244 (Tex. App.CFort Worth 2007, pet.
denied).





[49]See Tex. Const. art I, ' 19 (ANo citizen of this State
shall be deprived of life, liberty, property, privileges or immunities, or in
any manner disfranchised, except by the due course of the law of the land.@).





[50]Fort Worth, Tex.,
Ordinance 16986‑06‑2006 ' 15-36(I)(D) (amended 2009).





[51]Id.





[52]See Nootsie, Ltd., 925 S.W.2d at 661; Groves,
746 S.W.2d at 917.





[53]See Everett v. TK‑Taito,
L.L.C.,
178 S.W.3d 844, 849 (Tex. App.CFort Worth 2005, no pet.) (affirming trial court=s judgment dismissing
plaintiffs= claims for lack of
standing).