**MELMAT, INC. d/b/a El Cubo, Appellant,**

v.

**TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellee.**

No. 05–10–00911–CV.

Court of Appeals of Texas, Dallas.

Feb. 29, 2012.

---

Hilaree A. Casada, Richard Barrett–Cuetara, Cowles & Thompson, Dallas, TX, for Appellant.

Nicholas Canaday, III, Michael C. Crowley, Assistant Attorneys General, Administrative Law Division, Judith L. Kennison, Texas Alcoholic Beverage Commission, Austin, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and LANG–MIERS.

## OPINION

Opinion By Justice MORRIS.

This is an appeal from the trial court's judgment affirming the Texas Alcoholic Beverage Commission's order cancelling Melmat, Inc. d/b/a El Cubo's alcoholic beverage permits. El Cubo brings six issues generally contending the trial court erred in affirming the TABC's order because the order was not supported by substantial evidence and prejudiced El Cubo's substantial rights. El Cubo further argues that it is entitled to recover attorneys' fees and costs. Finding no merit in El Cubo's arguments, we affirm the trial court's judgment.

### I.

The TABC brought this enforcement action alleging that El Cubo violated the Texas Alcoholic Beverage Code in April and May 2009. Specifically the TABC asserted that on April 3 or 4, 2009, an agent, servant, or employee of El Cubo "solicited or permitted solicitation of a person to buy drinks for consumption" by an El Cubo employee in violation of §§ 11.61(b)(2) and 104.01(4) of the code. The TABC further asserted that on May 31, 2009, an agent, servant, or employee of El Cubo "sold or offered to sell an alcoholic beverage on the licensed premises during prohibited hours" in violation of § 11.61(b)(23) of the code. A hearing was conducted by an administrative law judge. After assessing the evidence and arguments of counsel, the judge found in favor of the TABC. In addition, after reviewing El Cubo's history of past violations, the judge recommended that El Cubo's permits be cancelled. The TABC adopted the administrative judge's findings and conclusions. It issued an order cancelling El Cubo's alcoholic beverage permits.

El Cubo filed a motion for rehearing with the TABC, which was overruled by written order. El Cubo then sought judicial review in district court. The trial court reviewed the administrative record and concluded the TABC's order was supported by substantial evidence. El Cubo now brings this appeal.

### II.

In its first two issues, El Cubo argues the trial court erred in affirming the TABC's order because the order was not supported by substantial evidence. Administrative decisions are reviewed under the substantial evidence rule. TEX. ALCO. BEV.CODE ANN. § 11.67(b) (West Supp. 2011). The test for substantial evidence is "whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *See Tex. Alcoholic Beverage Comm'n v. Sierra*, 784 S.W.2d 359, 360 (Tex.1990) (per curiam). Administrative decisions are presumed to be reasonable, and the burden is on the party seeking to set aside the decision to prove it was not supported by substantial evidence. *Tex. Alcoholic Bev-*

*erage Comm'n v. Cabanas,* 313 S.W.3d 927, 930 (Tex.App.-Dallas 2010, no pet.).

Whether there is substantial evidence to support an administrative decision is a question of law. *Tex. Dep't of Pub. Safety v. Alford,* 209 S.W.3d 101, 103 (Tex.2006). For there to be substantial evidence, there must be more than a mere scintilla but there may be less than a preponderance. *See Cabanas,* 313 S.W.3d at 930. Accordingly, the evidence may actually preponderate against the agency's decision but still amount to substantial evidence. *Id.* A reviewing court may not invade the fact finding authority of the administrative agency nor substitute its judgment for that of the agency. *Id.* Our focus is on the reasonableness of the administrative decision, not its correctness. *Id.*

In this case, the TABC alleged El Cubo committed two separate code violations: (1) an employee of El Cubo solicited a customer to buy a drink that would be consumed by an El Cubo employee and (2) El Cubo served alcoholic beverages during a time period in which service of alcoholic beverages was prohibited. Either violation would support cancellation of El Cubo's permits. TEX. ALCO. BEV.CODE ANN. §§ 11.61 & 104.01(4). We first address the evidence relating to the service of alcoholic beverages during a time when such service was prohibited.

■ At the hearing before the administrative law judge, the TABC presented the testimony of Diane Swint, an undercover officer working in the vice unit of the Dallas Police Department. Officer Swint testified that she entered El Cubo at approximately 2:15 a.m. on May 31, 2009. Swint stated that it was her understanding that the sale of alcoholic beverages was prohibited after 2:00 a.m., but as a matter of practice, officers allowed customers fifteen minutes to finish their drinks. When Officer Swint entered El Cubo at 2:15, there were approximately twenty to twenty-five customers present, and it did not appear that the establishment was closing. Swint walked to the bar and observed people drinking out of styrofoam cups. Swint testified that, in her experience, this indicated that beer was being sold after the permitted time for alcohol sales had passed.

According to Swint, at approximately 2:20 a.m., she asked the woman behind the bar, Norma Rodriguez, for a Corona beer. Swint watched as Rodriguez opened a bottle of Corona, poured the contents into a styrofoam cup, and handed it to her. Swint then paid Rodriguez for the beer and tipped her. At approximately 2:30 a.m., Swint walked up to the bar again and purchased a second beer, this time from a man named David Contreras. Like Rodriguez, Contreras opened a bottle of Corona beer, poured the contents into a styrofoam cup, and handed it to Officer Swint. Swint then paid Contreras and gave him a tip.

Swint stated that most of the beer sales she observed during the time she was in El Cubo involved bottles of Corona being poured into styrofoam cups. Swint observed both Rodriguez and Contreras serving beer to other customers and handling money from El Cubo's cash register. She also observed that Un Suk Chu, El Cubo's owner, was present in the establishment. TABC agent Claudio Ramirez testified at the hearing that he knew Contreras as the manager of El Cubo from past inspections of the facility. After making her observations, Swint called for assistance. Several other officers arrived and arrested Rodriguez and Contreras. Officers also found Chu hiding in the parking lot.

El Cubo argues that the above testimony does not constitute substantial evidence of a violation because the TABC provided

no evidence that Rodriguez or Contreras were El Cubo's employees, agents, or servants. El Cubo notes that the TABC did not make any inquiries about Rodriguez's or Contreras's employment status nor did it produce any employment records to substantiate its allegation. El Cubo then suggests that the absence of this evidence is fatal to the TABC's case. El Cubo cites no authority, however, and we have found none, holding that this type of evidence is necessary to establish a person's status as an employee, agent, or servant for the purposes of proving an after-hours sales violation.[1] Officer Swint testified that she observed both Rodriguez and Contreras working behind the bar at El Cubo, operating the cash register, and selling beer to customers in the presence of El Cubo's owner. Ramirez testified that he knew Contreras was a manager of El Cubo from previous inspections of the business. El Cubo produced no evidence to contradict this testimony. Based on the testimony of Swint and Ramirez, we conclude there was substantial evidence to show that Rodriguez and Contreras were employees, agents, or servants of El Cubo.

■ El Cubo also contends there is no substantial evidence to show that it served alcohol during a prohibited time period. El Cubo does not dispute that it was statutorily required to stop selling alcoholic beverages at 2:00 a.m.[2] *See id.* § 29.01. It argues instead that Swint's testimony that she purchased beer between 2:20 and 2:30 a.m. was "pure speculation" because

she did not testify that she looked at her watch or a clock to verify the time. El Cubo relies heavily on the Texas Peace Officer's Guide to the Alcoholic Beverage Code that states, when observing an after-hours sales transaction, an officer should record the "exact time of the sale according to the officer's watch or clock." Although making such a record may be the recommended practice, El Cubo cites no authority that such evidence is necessary to establish a violation. Swint testified definitively that she purchased beer at El Cubo between 2:15 a.m. and 2:30 a.m. This testimony is sufficient to establish that an after-hours sale of an alcoholic beverage occurred.

■ Finally, El Cubo argues that the TABC presented no documentary proof or physical evidence that other people in El Cubo were served alcohol during the prohibited time period. First, we note that it was unnecessary for the TABC to prove that others were served alcohol during the prohibited period because the sales to Swint alone were sufficient to show a violation. In addition, Swint testified that she witnessed purchases where other customers were given Corona beer poured into styrofoam cups. After reviewing the record, we conclude the TABC's finding that El Cubo violated section 11.61(b)(23) of the Texas Alcoholic Beverage Code is supported by substantial evidence. Because this finding is supported by substantial evidence, it is unnecessary for us to ad-

---

1. El Cubo cites the case of *Ackley v. State,* 592 S.W.2d 606 (Tex.Crim.App. [Panel Op.] 1980) for the proposition that the TABC must provide evidence meeting the "legal definition" of "employee," "agent," and "servant." *Ackley* addressed the different meanings of the terms employee, agent, and servant but did not address the types of evidence that would be sufficient to prove a person was, in fact, an employee, agent, or servant of the defendant. *Id.* at 608.

2. El Cubo appears to suggest the TABC cannot bring an enforcement action for sales occurring between 2:00 and 2:15 a.m. based on a police policy of allowing a fifteen-minute grace period for the conclusion of business. Because the evidence in this case showed the sales occurred after 2:15 a.m., it is unnecessary for us to address this argument.

dress the evidence supporting the alleged violation of sections 11.61(b)(2) and 104.01(4).

In its third, fourth, and fifth issues, El Cubo contends the TABC's order prejudices its substantial rights. Most of the arguments El Cubo makes to support this contention are unsupported by any legal authority and, as such, present nothing for our review. *See* Tex.R.App. P. 31(h). El Cubo appears, however, to structure its arguments to correspond to the provisions of section 2001.174(2) of the Texas Government Code. Tex. Gov't Code Ann. § 2001.174(2) (West 2008). Under section 2001.174(2), a court reviewing an administrative decision under the substantial evidence rule "shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Id.* Because El Cubo's arguments recite several of the grounds for reversal set forth in section 2001.174(2), we will address its arguments in the context of those provisions.

■ El Cubo argues that the TABC violated its constitutional rights by applying the wrong standard of review to its motion for rehearing and by failing to conduct an unbiased review of the record on rehearing. El Cubo does not identify in its brief what constitutional provision it believes was violated. But, in its reply brief, El Cubo refers to its right to due process. Although El Cubo contends in its reply brief that it was entitled to due process in connection with its motion for rehearing, the two cases El Cubo cites to support this argument, *Lewis v. Metro. Savs. and Loan Ass'n.*, 550 S.W.2d 11 (Tex.1977) and *City of Arlington v. Centerfolds*, 232 S.W.3d 238 (Tex.App.-Fort Worth 2007, pet. denied), do not stand for that proposition. Both *Lewis* and *Centerfolds* hold that a party is entitled to due process in connection with the original administrative hearing that produces the record being reviewed. *See Lewis*, 550 S.W.2d at 13–14; *Centerfolds*, 232 S.W.3d at 249–50. El Cubo makes no argument that it was denied due process in the original hearing before the administrative law judge. Accordingly, both *Lewis* and *Centerfolds* are inapposite.

■ Even if there were error in connection with the motion for rehearing, such error would not be a violation of El Cubo's constitutional right to due process. A rehearing is not essential to due process in administrative proceedings. *See R.D. Oil Co. v. R.R. Comm'n of Tx.*, 849 S.W.2d 871, 875 (Tex.App.-Austin 1993, no pet.). El Cubo's due process argument, therefore, is not well taken.

■ El Cubo also appears to argue that its constitutional rights were violated because the TABC imposed a harsher punishment in this case than it imposed in similar cases. Although El Cubo does not refer to a specific constitutional provision, we will assume that it is contending the TABC's order violated its right to equal protection. To establish a claim of discriminatory enforcement, a defendant must first show that it has been singled out for prosecution while others similarly situated and committing the same acts have not. *Allen–Burch, Inc. v. Tex. Alcoholic Beverage Comm'n*, 104 S.W.3d 345, 353 (Tex.App.-Dallas 2003, no pet.). It is

not sufficient to show only that the law has been enforced against some and not others. *Id.* The defendant must also show that the agency purposefully discriminated against it on the basis of such impermissible considerations as race, religion, or the desire to prevent the exercise of constitutional rights. *Id.*

In this case, El Cubo has made no attempt to show that it has been discriminated against on the basis of any impermissible consideration. El Cubo states only that it was treated differently than other businesses that violated the Alcoholic Beverage Code in a similar manner. As stated above, disparate treatment alone is insufficient to show discrimination. *Id.* Furthermore, the only support El Cubo provides to show alleged disparate treatment is two TABC orders in cases where the respondent was sanctioned for serving alcohol during prohibited hours. El Cubo provides only a cursory review of these two cases and an examination of the orders shows that they were not factually similar to the case before us. We conclude El Cubo has failed to show that the TABC's order was discriminatory. *See id.* We further conclude El Cubo has failed to show that the TABC's order violates any constitutional or statutory provision. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(A).

■■■ El Cubo makes a short and unsupported argument that the TABC's order exceeded its statutory authority. *See id.* § 2001.174(2)(B). El Cubo first states that the sanction of cancelling its permit exceeded the permissible punishment for its conduct under the schedule of penalties and sanctions set forth in the Texas Administrative Code. *See* 16 TEX. ADMIN. CODE § 34.2. This argument is misplaced. Although the schedule of sanctions and penalties may provide some guidance in administrative hearings, the schedule is

not binding in a contested case such as this. *See id.* § 34.1(j).

■■■ El Cubo then states the ruling exceeded the TABC's authority because "the conduct described in the findings does not violate the statute." We assume the statute El Cubo is referring to is section 11.61 of the Alcoholic Beverage Code, which allows the suspension or cancellation of a permit upon a finding that the permit holder "sold, served, or delivered an alcoholic beverage when its sale is prohibited." TEX. ALCO. BEV.CODE ANN. § 11.61(b)(23). The findings in the order before us clearly state that two employees of El Cubo sold beer after the time permitted for the sale of alcohol had passed. Because the findings support a violation of the statute, the TABC did not exceed its authority in cancelling El Cubo's permits. *Id.*

El Cubo makes several arguments that the TABC's order is affected by an error of law. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(D). In its first two arguments, El Cubo reiterates its contentions that the TABC did not provide proper evidence of Rodriguez's and Contreras's employment status or the exact time at which Swint purchased alcoholic beverages. These arguments have been addressed above, and we will not revisit them here.

■■■ In addition to these arguments, El Cubo contends the TABC incorrectly determined that the "safe harbor" provisions of section 106.14 of the Alcoholic Beverage Code were not applicable in this case. Specifically, El Cubo contends the TABC erroneously found that the provisions of section 106.14 apply only to the sale of alcohol to a minor or an intoxicated person. The finding set forth in the order, however, is that the provisions of section 106.14 do not apply to the sale of alcohol during prohibited hours.

Section 106.14 of the Alcoholic Beverage Code is located in the chapter that relates to the sale of alcohol to minors. TEX. ALCO. BEV.CODE ANN. Ch. 106. Subsection (a) of section 106.14 states that,

> [f]or purposes of this chapter and any other provision of this code relating to the sales, service, dispensing, or delivery of alcoholic beverages to a person who is not a member of a private club on the club premises, a minor, or an intoxicated person or the consumption of alcoholic beverages by a person who is not a club member of a private club on the club premises, a minor, or an intoxicated person, the actions of an employee shall not be attributable to the employer if: (1) the employer requires its employees to attend a commission-approved seller training program; (2) the employee has actually attended such a training program; and (3) the employer has not directly or indirectly encouraged the employee to violate such law.

TEX. ALCO. BEV.CODE ANN. § 106.14(a) (West Supp. 2011). The prohibition on serving alcoholic beverages during certain hours does not "relat[e] to the sales, service, dispensing, or delivery of alcoholic beverages to a person who is not a member of a private club on the club premises, a minor, or an intoxicated person." The after-hours sales prohibition applies to all sales regardless of the status of the purchaser. See id. § 11.61(23). By its terms, therefore, section 106.14 does not apply to an enforcement action under section 11.61(23), and the finding stated in the order was correct.

■ Even if section 106.14 applied to after-hours sales, El Cubo makes no showing that the provisions of the section would apply under the facts of this case. El Cubo does not contend that the subject sales were to a minor or an intoxicated person. And it makes no argument that it

would qualify as a private club. Accordingly, El Cubo has failed to show that the TABC's order was affected by an error of law.

■ Finally, El Cubo makes numerous arguments that the TABC's order was arbitrary and capricious and constituted an abuse of discretion. See TEX. GOV'T CODE ANN. § 2001.174(2)(F). The focus of El Cubo's argument is that the cancellation of its permits was an excessively severe punishment in light of the evidence and, therefore, constituted an abuse of discretion. An agency has broad discretion in determining which sanction best serves the statutory policies committed to the agency's oversight. See Allen–Burch, 104 S.W.3d at 352. This discretion may be abused, however, if the agency failed to consider a factor the legislature directed it to consider, considered an irrelevant factor, or reached an unreasonable result. Id. The legislature has stated that the TABC may relax any provision of the code relating to the suspension or cancellation of a permit if the commission finds: (1) the violation could not have been prevented by the exercise of due diligence; (2) the permittee was entrapped; (3) the agent, servant, or employee violated the code without the knowledge of the permittee; (4) the permittee did not knowingly violate the code; (5) the permittee demonstrated good faith including taking actions to rectify the consequences of the violation and deter future violations; or (6) the violation was a technical one. See TEX. ALCO. BEV.CODE ANN. § 11.64. But these considerations are permissive, not mandatory, and it need not be proven that El Cubo knowingly violated the code. See Allen–Burch, 104 S.W.3d at 352.

The TABC submitted evidence showing that El Cubo had committed multiple code violations in the past, including an after-hours sales violation, and that it had been

given both warnings and fines for these violations. Officer Swint testified that, on the night of the violations in question, she saw El Cubo's owner, Ms. Chu, in the bar and that the people working behind the bar were openly selling beer to customers after the time permitted for alcohol sales had passed. Swint further testified that, although she arrived at El Cubo during the time period in which the sale of alcoholic beverages was prohibited, she did not see any indication that the establishment was attempting to wrap up its business or cease making sales of alcohol. Other officers testified that, when they arrived at the bar to make arrests, they found Chu hiding in the parking lot. The order states that "the number of violations and repeat violations committed by [El Cubo] over a relatively short period of time is . . . cause for concern." The order further states that "the evidence presented does not inspire any confidence [the owner] is capable or of a mind to adequately oversee the operation of the licensed premises as required by law and in a manner that would prevent violations that threaten public health, safety, and welfare from occurring in the future."

El Cubo makes repeated arguments that Chu's status as an immigrant with limited ability to speak or read English should be considered a mitigating factor with respect to punishment. Yet El Cubo makes no argument that Chu was unaware of the code's requirements. Indeed, the evidence shows Chu was aware of El Cubo's previous violations and that she was present during the commission of the violations at issue. El Cubo points to no legislative directive indicating that the TABC must consider language or cultural barriers when determining what sanction to impose or that these factors could weigh against the TABC's interest in protecting the public's health, safety, and welfare.

El Cubo has not shown that the TABC failed to consider a factor the legislature directed it to consider or that it considered a factor that was irrelevant. After examining the record, we conclude the order cancelling El Cubo's permits was not arbitrary, capricious, or unreasonable. We further conclude the order did not prejudice El Cubo's substantial rights.

In its sixth and final issue, El Cubo contends it is entitled to attorneys' fees and costs. El Cubo's arguments are premised on it being the prevailing party in this action. Because we have decided the issues discussed above against El Cubo, it is unnecessary for us to address its arguments on fees and costs.

We resolve El Cubo's first through sixth issues against it. We affirm the trial court's judgment.