**AFFIRM; and Opinion Filed this June 3, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00444-CV

## ANA MARIA VILLATORO D/B/A EL NUEVO AMANECER, Appellant

## V.

## TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellee

### On Appeal from the 298th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 12-01792

## MEMORANDUM OPINION
Before Justices Lang-Miers, Myers, and Lewis
Opinion by Justice Lang-Miers

Appellant Ana Maria Villatoro d/b/a El Nuevo Amanecer appeals the trial court's judgment affirming an order by the Texas Alcoholic Beverage Commission suspending Villatoro's alcoholic beverage permit and license for five days. In two issues, Villatoro argues that the trial court erred because the order was not supported by substantial evidence and prejudiced her substantial rights. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

### BACKGROUND

The TABC brought this enforcement action alleging that, on or about August 11, 2009, Villatoro or Villatoro's agent, servant, or employee "solicited or permitted solicitation of a

person to buy drinks for consumption by" Villatoro or any of her employees in violation of the alcoholic beverage code. *See* TEX. ALCO. BEV. CODE ANN. §§ 11.61(b)(2), 61.71(a)(1) (West Supp. 2012), § 104.01(4) (West 2007). The TABC sought a five-day suspension of Villatoro's wine and beer retailer's on-premise permit and on-premise late hours license.

An administrative law judge conducted a hearing concerning the alleged violation at the State Office of Administrative Hearings. At the conclusion of the evidence, the ALJ found in the TABC's favor, and issued a Proposal for Decision containing findings of fact and conclusions of law. After Villatoro filed exceptions to the Proposal for Decision and the TABC responded to those exceptions, the ALJ filed an Amended Proposal for Decision. Villatoro filed amended exceptions, but the ALJ declined to amend the Amended Proposal for Decision.

In the Amended Proposal for Decision, the "ALJ found the testimony" of the TABC's two witnesses—Victor Lucas, a detective with the Dallas police department, and Leigh Sosebee, the TABC case agent—"credible and persuasive." The ALJ concluded that Villatoro's "employee, agent or servant, solicited a person to buy drinks for consumption by [Villatoro's] agent, servant, or employee in violation of" alcoholic beverage code sections 11.61(b)(2) and 104.01(4). *Id.* §§ 11.61(b)(2), 104.01(4). The ALJ recommended suspension of Villatoro's permit and license for five days.

The TABC adopted the ALJ's findings of fact and conclusions of law and suspended Villatoro's license and permit for five days unless Villatoro paid a civil penalty in the amount of $1,500. Villatoro filed a motion for rehearing, and the TABC denied the motion. Villatoro then filed this lawsuit seeking judicial review of the TABC's order in district court. After reviewing the evidence and hearing arguments of counsel, the trial court concluded that the TABC's order was supported by substantial evidence and was legally correct. Villatoro then brought this appeal.

–2–

## STANDARD OF REVIEW AND APPLICABLE LAW

In two issues, Villatoro argues that the trial court erred in affirming the TABC's order because the order was not supported by substantial evidence and prejudiced her substantial rights. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(E) (West. 2008). We review administrative decisions by the TABC under the substantial evidence rule. TEX. ALCO. BEV. CODE ANN. § 11.67(b) (West Supp. 2012). The test for substantial evidence is "whether the evidence as a whole is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action." *Tex. Alcoholic Beverage Comm'n v. Sierra*, 784 S.W.2d 359, 360 (Tex. 1990) (per curiam). Substantial evidence must be more than a mere scintilla but may be less than a preponderance. *Melmat, Inc. v. Tex. Alcoholic Beverage Comm'n*, 362 S.W.3d 211, 215 (Tex. App.—Dallas 2012, no pet.). As a result, the evidence may actually preponderate against the agency's decision but still amount to substantial evidence. *Id.* Our focus is on the reasonableness of the administrative decision, not on its correctness. *Id.*

Whether there is substantial evidence to support an administrative decision is a question of law. *Tex. Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006); *Melmat*, 362 S.W.3d at 215. As a reviewing court, we may not invade the fact finding authority of the agency or substitute our judgment for that of the agency. *Melmat*, 362 S.W.3d at 215. Administrative decisions are presumed to be reasonable, and the burden is on the party seeking to set aside the decision to prove it was not supported by substantial evidence. *Id.* at 214.

The ALJ is the sole judge of witness credibility in a contested case hearing and we may not substitute our judgment concerning the credibility of witnesses for the ALJ's judgment. *I Gotcha, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. 2-07-150-CV, 2008 WL 2930614, at *4 (Tex. App.—Fort Worth July 31, 2008, no pet.) (mem. op.); *Granek v. Tex. State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778–79 (Tex. App.—Austin 2005, no pet.). The ALJ may accept or

–3–

reject the testimony of a witness and may accept part of a witness's testimony and disregard the remainder. *I Gotcha*, 2008 WL 2930614, at *4; *Granek*, 172 S.W.3d at 778. We must resolve any evidentiary ambiguities in favor of the administrative order with a finding that substantial evidence supports the ALJ's decision. *Tex. Dep't of Pub. Safety v. Hudson*, No. 05-10-01129-CV, 2012 WL 440463, at *3 (Tex. App.—Dallas Feb. 13, 2012, no pet.) (mem. op.); *I Gotcha*, 2008 WL 2930614, at *4.

## ANALYSIS

In two issues, Villatoro argues that there was not substantial evidence to support a finding (1) that drink solicitation occurred or (2) that the person who allegedly engaged in drink solicitation was an employee of Villatoro and that the TABC's order prejudiced her substantial rights.

### Drink Solicitation

In her first issue, Villatoro argues that the administrative finding that drink solicitation occurred was not supported by substantial evidence because the evidence supporting the finding was "based upon a witness['s] inaccurate testimony and the witness admitted his testimony was inaccurate."

**Evidence**

At the hearing before the administrative law judge, the TABC presented the testimony of Detective Lucas and Agent Sosebee. Villatoro presented her own testimony.

Detective Lucas testified that, on August 11, 2009, he entered El Nuevo Amanecer with his partner to investigate possible TABC violations including overserving alcohol to intoxicated individuals and the practice of "ficheras." Lucas testified that ficheras are "generally females that work in . . . predominantly Hispanic bars" who "entice clients to purchase more alcohol or to stay" at the bar "because they get the companionship of that person that they're buying drinks

–4–

for." Lucas testified that a woman working as a fichera would "approach you and ask you if you would buy them a drink" and the drink for the woman "would generally cost about $15" while the drink for the purchaser "would cost $5."

TABC Agent Sosebee also testified that solicitation had become "a major problem in many of the Mexican or Latin bars in the area of northwest Dallas, which is where the location [of El Nuevo] is." She further testified that solicitation was a "common practice" that was "leading to other violations" including selling alcoholic drinks to intoxicated patrons, "possible prostitution, and some drugs." Sosebee testified that she had investigated more than twenty cases involving ficheras, and described the practice of ficheras.

> The Ficheras typically hold more of a waitress-type role. They will get drinks for patrons, but they do ask [for] drinks for themselves. And the drink— the price for their drink is typically at least $10 more, around that amount, than what the patron's drink would be.

> And basically the patron is paying for the companionship and the time. And the—I guess the—being waited on by the Ficheras at the location. It brings in the male clients. They get a female to hang out with them as their companion for that time, and it promotes—it just helps bring in clientele.

Lucas testified that when he and his partner walked into El Nuevo Amanecer, he bought a beer at the bar for $5.00 and then he and his partner sat down. Lucas then testified:

> After being there a few minutes—I don't recall exactly how much time. But we were approached—I was approached by a Latin female who asked if I needed another drink. I told her sure. She asked me if I would get her a drink. I told her I would.

> She asked what I wanted. I said the same, a Corona. So she brought back two Coronas. And I asked her—I think she told me it would be $20, and I asked her if there would be any change when I handed her the twenty and she said no. And she explained that her drink costs $15 and mine cost $5.

> . . . .

> Well, we went over to the pool table there and started playing pool, which I think I played a game of pool with her. And at one point when our drinks ran low again, she asked if I wanted another. I told her I would—I told her I did. She went back to the bar and got two more beers for $20 again. At that point, I didn't

–5–

ask her—you know, I knew that 15—or, you know, that I wouldn't get any change at that point.

On cross examination, Villatoro's attorney and Lucas had the following exchange:

[Villatoro's Attorney]: So your testimony is when she first—the first time she approached you, she asked you if you would buy her a drink; is that correct?

[Witness]: No, sir. She asked if I needed another drink and then asked if I would buy her a drink.

[Villatoro's Attorney]: Okay. Did she say, Will you invite me to join you for a drink?

[Witness]: I don't recall the exact wording she used. I—yeah, I don't recall her exact wording she used.

[Villatoro's Attorney]: But would you agree if that's what she said, she wouldn't—she wouldn't be asking you to buy her a drink?

Do you invite me to join you for a drink is not the same thing as asking you to buy me a drink, correct?

[Witness]: Correct.

[Villatoro's Attorney]: I've got a copy of your report here. And if you would take a look at that and see if it does say, Will you invite me—

[Witness]: Will you invite me—

[Villatoro's Attorney]: —to join you for a drink?

[Witness]: —to join you for a drink, correct, and then she stated that her beer cost $15 and mine cost $5.

Villatoro's attorney and Lucas quoted from the arrest report that Lucas submitted on August 12, 2009 for Maria Ramos, the woman who Lucas alleged solicited an alcoholic beverage from him at El Nuevo. The report read: "A/P Ramos, M. approached A/O V. Lucas and asked A/O if he was ready for another beer. A/O stated he was to which A/P replied 'Will you[ ]invite me to join you for a drink?'"

Sosebee testified that, following this alleged incident, she made an investigative visit to El Nuevo in November 2009 "to inquire about employment records," and that other TABC agents made a second investigative visit in December 2009. Sosebee testified that Ramos was

–6–

not at El Nuevo during the first investigatory visit when Sosebee was present, but that Ramos was at El Nuevo when other TABC agents conducted the second investigatory visit. Sosebee testified that agents on the second visit "went in at a time that was not exactly prime bar time, where the bar would be busy" and that there were "several females with tight-fitting dresses" in a "more dressed up way" with "heavy makeup." Sosebee further testified that "normally what we find when we find the Ficheras working at locations" is that they are at a bar "early waiting on patrons to arrive." Sosebee testified that Ramos "was one of the six females identified that night." Sosebee testified that—based on the investigation—she found that an "administrative violation did occur for the solicitation of drinks by an employee of the licensed permit[ee], El Nuevo."

On cross examination, Sosebee testified that she concluded that Ramos was a fichera based upon information from the agents who conducted the second investigatory visit, including "[t]he timing that she was in there, the way she was dressed, and based on past experience, it matched with what [Sosebee] had found before."

Villatoro testified in her defense that she did not "knowingly allow women" to act as waitresses who get customers to purchase drinks for them and charge the customer "more for it than the bar normally would." Villatoro further testified: "It's not permitted. The beer we sell, we charge $5 all the time." Although Villatoro testified that she did not know what a fichera was, she also testified that she knew that the practice of ficheras was illegal.

**Arguments**

Villatoro argues that Lucas's testimony was not substantial evidence that a solicitation occurred because Lucas testified based upon a "faulty memory" that was "corrected" after his "memory [was] refreshed" and that "[i]t is not reasonable to base a decision upon an incorrect memory." The TABC argues that, based on the factual record as a whole, it was reasonable for a

decision maker to conclude that Villatoro's employees, agents, or servants solicited or permitted solicitation of a person to purchase drinks for consumption in exchange for companionship in violation of alcoholic beverage code section 104.01. *See* TEX. ALCO. BEV. CODE ANN. § 104.01(4). The TABC contends that, because the ALJ was the sole judge of the witnesses' credibility and could accept or reject all or part of the testimony of any witness, this court should not substitute its judgment for the ALJ's judgment concerning the credibility of the TABC's witnesses, and that—based upon their testimony—the ALJ could conclude that Villatoro violated section 104.01. The TABC also argues that, to the extent that Lucas's testimony was ambiguous, courts should resolve any ambiguity to support the administrative order concluding that there was substantial evidence.

**Discussion**

We conclude that substantial evidence supports the TABC's order adopting the ALJ's conclusion that a solicitation violation occurred at El Nuevo on August 11, 2009. Lucas testified that—after Lucas had purchased a beer for $5—Ramos approached Lucas at El Nuevo and "asked [Lucas] if [he] would get her a drink"; that Lucas gave Ramos $20 and she brought back two beers and no change; that Ramos explained that her beer cost $15 and his beer cost $5; that Ramos subsequently asked Lucas if he wanted another beer; and that Lucas again gave Ramos $20 and that Ramos returned with two beers and no change. Although the statement in Lucas's report that Ramos asked Lucas "will you[ ]invite me to join you for a drink" differed from his testimony that Ramos asked him to purchase a drink for her, the report otherwise was consistent with Lucas's testimony. Further, Lucas's report stated that Ramos "asked [Lucas] to buy her a second beer." In addition, although Lucas agreed that his arrest report said "will you invite me to join you for a drink" and that this statement "is not the same thing as asking you to buy me a drink," Lucas's also described how "then she stated that her beer cost $15 and mine cost 5."

–8–

Sosebee, who had investigated over twenty cases involving ficheras, testified that the evidence concerning Ramos when TABC agents saw her at El Nuevo in December 2009—including the time of day Ramos was at El Nuevo, how she was dressed, and "based on past experience, it matched with what [Sosebee] had found before"—led Sosebee to conclude that Ramos was a fichera.

Although Villatoro testified that solicitation did not occur at El Nuevo, the ALJ heard Lucas's and Sosebee's testimony, observed their demeanor, and found their testimony to be "credible and persuasive." Consequently, we conclude that substantial evidence supports the ALJ's conclusion that solicitation occurred. *See Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 452 (Tex. App.—Austin 2011, pet. denied) ("Resolving factual conflicts and ambiguities is the agency's function, and the purpose of substantial-evidence review is to protect that function."); *Granek*, 172 S.W.3d at 778–79 (finding agency decision that disciplinary grounds existed against doctor was supported by substantial evidence even though complainant's testimony was "somewhat confused and inconsistent regarding the details of her surroundings when the incidents occurred"). We resolve Villatoro's first issue against her.

## Employment Status

In her second issue, Villatoro argues that the administrative finding that Ramos was Villatoro's employee "is based upon no evidence or speculation and is not supported by substantial evidence."

**Evidence**

On direct examination, Detective Lucas testified:

[Witness]: I asked [Ramos] how long she had been employed there at the—at the business. She said she had only worked there for a short time, but that she worked every day.

I think—I believe I asked her how often are you here, or what—you know, something like that. She said, well, I work every day, but I just started recently.

–9–

[Attorney for TABC]: Do you have any reason to believe that she was not employed there?

[Witness]: No. She took my money, took it to the bar, brought me drinks like a waitress would. She, you know, picked up empty bottles, throw [sic] them in the trash can.

So she—she acted like she was employed.

On cross examination, Lucas testified that he did not "have any evidence that [Villatoro] ever paid this—this person any wages or compensation[.]"

TABC Agent Sosebee testified that, when she visited El Nuevo in November 2009 and spoke with Villatoro about employment records, she was "told that they did not have any other employees" other than Villatoro and her husband and "that there were not any other employment records." But Sosebee testified that "a woman [was] working behind the bar" and that Villatoro explained "that she was strictly there to help out for that night because her husband was in the hospital."

Sosebee also testified that—when other TABC agents conducted the second investigative visit in December 2009—"that same woman was found behind the bar; reidentified; stated that she was an employee and that she was working there." As discussed above, Sosebee also testified that agents found Ramos at El Nuevo that night and that "[s]he was one of the six females identified that night." Sosebee testified that there were "several females" in "tight-fitting dresses" and "heavy makeup" who were at El Nuevo at an off-peak hour. Sosebee testified that normally when agents "find the Ficheras working at locations[,]" agents "find them early waiting on patrons to arrive."

Agent Sosebee testified that, although she did not procure any employment records from Villatoro, "employment records are very hard to find" for ficheras because usually "these are kind of transient people" who "might go around from bar to bar" and "most of the time, employment records aren't kept for them." According to Sosebee, ficheras are "mainly dealt

with on a cash basis, paid out that night so business records are not kept." Sosebee testified that she "determined that [Ramos] was acting as an employee" based upon "her actions that night and then the further investigation[.]"

On cross examination, Sosebee testified that she did not see Ramos at El Nuevo when she visited El Nuevo to investigate in November 2009, nor did anyone at El Nuevo tell Sosebee that Ramos was an employee. Sosebee also testified on cross examination that she requested that other agents visit El Nuevo for a subsequent visit to get further information, and that it was "common practice for us to investigate these things on more than one occasion, not just visit the location one time[.]"

Sosebee also testified on cross examination that it was not illegal for a bar patron "to buy a drink for another lady"; that Villatoro never told Sosebee "that she paid [Ramos] for working there" or that she had authorized Ramos to conduct business affairs for her; that Sosebee never found payroll records at El Nuevo or any written agreements that Villatoro authorized Ramos to conduct business affairs for Villatoro; and that Sosebee never spoke to Ramos. Sosebee further testified on cross examination that women who "go to bars sometimes dress to attract attention to themselves[.]"

Villatoro testified that she and her husband were the only employees at El Nuevo, that Ramos was not and had never been her employee, that she had never paid Ramos, that she had no payroll records for Ramos, that she had never controlled, supervised, or discussed work schedules with Ramos, that she had never directed Ramos to do any kind of accounting or other business for Villatoro, that she had never told the TABC that Ramos was her employee, and that she had never given Ramos a ticket—an item sometimes used by ficheras—and that Ramos had never given her a ticket. In addition, Villatoro testified that Villatoro "didn't know her" and did not "remember seeing" Ramos before this incident. She testified that Juana Merlan, whom

–11–

TABC investigators saw working behind the El Nuevo bar, worked "as a fill-in" and worked "[o]nly when I need [her] or when I go out to . . . work." On cross examination, Villatoro testified that Merlan was not employed by her but that "[s]he just works once in a while" and that she had paid her "for an hour or something like that" of work. Villatoro testified that she had no records of Merlan's employment.

Based on this evidence, the ALJ found that Ramos admitted to Lucas "that she was an employee of" Villatoro, that Ramos "was acting as if she was an employee of Respondent by picking up empty bottles and depositing them in the trash[,]" and that Ramos "was acting as a *fichera*." The ALJ concluded that Villatoro's "employee, agent or servant" engaged in solicitation of drinks for consumption in violation of the alcoholic beverage code.

**Arguments**

Villatoro argues that, under *Ackley v. State*, 592 S.W.2d 606, 608 (Tex. Crim. App. [Panel Op.] 1980), the TABC "must prove that a person was paid by the permittee and subject to the control of the permittee" to establish that the person was an employee of the permittee. Villatoro contends that the TABC "produced no evidence" that Villatoro "paid or controlled" Ramos, and that "[n]o evidence is not substantial evidence."

The TABC argues that the *Ackley* standard "is inapposite" because it concerns employer-employee relationships "in the context of criminal proceedings." The TABC also contends that the TABC was not required to show that Ramos was an employee of Villatoro, but rather that Ramos was an agent, servant, or employee of Villatoro under alcoholic beverage code § 104.01. *See* TEX. ALCO. BEV. CODE ANN. § 104.01. Relying on *Sealite, Inc. v. Texas Warehouse Co.*, 437 S.W.2d 896, 902 (Tex. Civ. App.—Dallas 1969, no writ), the TABC argues that "Ramos and other *ficheras* on the premises" had "'apparent authority' to act as agents for El Nuevo, because

–12–

they were permitted to" solicit drinks, approach strangers, obtain drinks from the bar, and "hold themselves out as employees by word and deed" while "in the presence of El Nuevo employees."

Additionally, the TABC argues that, for purposes of section 104.01, "the women clearly qualify as employees" because, under *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993), a lack of employment documentation does not establish that ficheras were not agents or employees and the ficheras in this case were dependent upon El Nuevo to provide them with patrons and drinks to purchase so that they could earn tips. Villatoro argues in response that, because *Reich* concerned whether dancers were employees under the Federal Labor Standards Act, *Reich* does not state the applicable test. Instead, Villatoro contends that the *Ackley* standard is "the only practical standard" in cases concerning the sale and distribution of alcoholic drinks.

Villatoro also argues that Lucas and Sosebee concluded that Ramos was an employee "without a sufficient evidentiary basis" and based on speculation. The TABC argues that substantial evidence supports the ALJ's finding "as a fact that Ramos was a '*fichera*' working at El Nuevo."

**Discussion**

We conclude that there was substantial evidence to support the ALJ's finding that Ramos "was acting as a *fichera*" and the ALJ's conclusion that, based on the ALJ's findings of fact, that Villatoro's employee, agent, or servant solicited a person to buy drinks in violation of sections 11.61(b)(2) and 104.01(4) of the code. *See* TEX. ALCO. BEV. CODE ANN. §§ 11.61(b)(2), 104.01(4). The ALJ found the testimony of Lucas and Sosebee to be "credible and persuasive." According to Lucas's testimony, Ramos stated that—although "she had only worked there for a short time"—she worked at El Nuevo "every day." Lucas also testified that Ramos "acted like she was employed" because she took Lucas's money to the bar, "brought [Lucas] drinks like a waitress would[,]" "picked up empty bottles," and threw "them in the trash can." Sosebee

testified that TABC agents identified Ramos at El Nuevo months after her arrest for solicitation. And Sosebee, who had investigated "more than 20" cases involving ficheras, testified that she concluded that Ramos was a fichera based upon "[t]he timing that she was in" El Nuevo when TABC agents conducted their second investigative visit, "the way she was dressed," and "based on past experience" of what Sosebee "had found before" in other cases. There is no evidence that Villatoro paid Ramos compensation and there are no employment records reflecting that Ramos worked for Villatoro. But Sosebee also testified that "most of the time, employment records aren't kept for" ficheras because "these are kind of transient people" who are "mainly dealt with on a cash basis" and "paid out that night[.]"

Additionally, Villatoro's testimony contained inconsistencies. She claimed that she and her husband were the only employees at El Nuevo but TABC agents observed Merlan working behind the bar on both of their investigatory visits to El Nuevo. On cross examination, Villatoro admitted that Merlan worked for Villatoro "once in a while" but that she had no employment records for Merlan. Villatoro testified that she did not know what ficheras were but also testified that she knew that ficheras were illegal.

Because the ALJ was the sole judge of witness credibility in the contested case hearing, we may not substitute our judgment concerning the credibility of witnesses for the ALJ's judgment. *See Granek*, 172 S.W.3d at 778–79. In addition, as we concluded in *Melmat*, "*Ackley* addressed the different meanings of the terms employee, agent, and servant but did not address the types of evidence that would be sufficient to prove a person was, in fact, an employee, agent, or servant of the defendant."[1] *Melmat*, 362 S.W.3d at 216 n.1. And, as in *Melmat*, our focus here is not on whether Ramos fit the "legal definition" of an employee as stated in *Ackley*, but

---

[1] Similar to *Reich* where the federal court concluded that dancers were employees under the Federal Labor Standards Act even though they did not receive compensation from the club where they danced, we stated in *Melmat* that we located no authority holding that evidence of employment records or evidence of inquiries regarding employment status were "necessary to establish a person's status as an employee, agent, or servant" to prove an after-hours sales violation under the alcoholic beverage code. *Melmat*, 362 S.W.3d at 216.

rather whether there was substantial evidence to support the determination that she was an employee, agent, or servant for purposes of establishing a violation of section 104.01(4). *See* TEX. ALCO. BEV. CODE ANN. § 104.01(4); *Melmat*, 362 S.W.3d at 216 n.1; *see also I Gotcha*, 2008 WL 2930614, at *3 (involving allegations of solicitation for sexual purposes under section 104.01 and noting that the "term 'employee' is not defined in" the alcoholic beverage code and, as a result, "we apply its ordinary meaning in our analysis"). Consequently, we conclude that there was substantial evidence to show that Ramos was an employee, agent, or servant of Villatoro. *See Melmat*, 362 S.W.3d at 215–16 (concluding there was substantial evidence that two people behind bar serving beer to customers in the presence of tavern owner were employees, agents, or servants of tavern even though the TABC did not ask about their employment status nor produce any employment records); *see also Tex. Alcoholic Beverage Comm'n v. Top of the Strip, Inc.*, 993 S.W.2d 242, 249–50 (Tex. App.—San Antonio 1999, pet. denied) (concluding that there was substantial evidence to support finding of violation because "[r]easonable minds could have concluded that [night club] authorized a minor to dance topless[,]" even though the club's accountant testified that she received no employment records for the dancer and the club's owner testified that "a disc jockey allowed the minor to dance and that she was not an employee"). We resolve appellant's second issue against her.

Because we conclude that there was substantial evidence to support the TABC's order and because, under government code section 2001.174(2)(E), Villatoro was required to establish both that the TABC's order was not reasonably supported by substantial evidence and that the order prejudiced her substantial rights, we do not need to reach Villatoro's argument that the order prejudiced her substantial rights. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(E); *see Citizens Against Landfill Location v. Tex. Comm'n on Envtl. Quality*, 169 S.W.3d 258, 264 (Tex. App.—Austin 2005, pet. denied); *Tex. Dept. of Pub. Safety v. Cantu*, 944 S.W.2d 493, 495 (Tex.

App.—Houston [14th Dist.] 1997, no writ) ("[T]o reverse an agency decision, the reviewing court must conclude (1) that the agency's decision was erroneous for one of the reasons enumerated in subsections (A) through (F), *and* (2) that substantial rights of the appellant have thereby been prejudiced.").

We resolve Villatoro's two issues against her and affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

120444F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ANA MARIA VILLATORO D/B/A EL
NUEVO AMANECER, Appellant

No. 05-12-00444-CV     V.

TEXAS ALCOHOLIC BEVERAGE
COMMISSION, Appellee

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 12-01792.
Opinion delivered by Justice Lang-Miers,
Justices Myers and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of June, 2013.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE