# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00757-CV

**Richard Walton, Appellant**

**v.**

**Texas Real Estate Commission, Appellee**

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-001328, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Richard Walton appeals the district court's judgment affirming the Texas Real Estate Commission's order revoking his real-estate sales-agent license. Walton contends that the Commission lacked a legal basis on which to change the administrative law judge's recommendation not to revoke his license or the findings and conclusions underlying it and that the Commission's changes are not reasonably supported by substantial evidence or are arbitrary, capricious, or exceed its permissible discretion. We will affirm the trial court's judgment.

## BACKGROUND

Walton obtained a real-estate sales-agent license on November 29, 2018. He was arrested in January 2019 in Collin County for distributing marijuana-based products. He was also charged with previous offenses of distributing marijuana-based products in Denton County in October 2018—offenses that predated his receipt of his license. He explained to Commission staff

(Staff) that in Denton County he delivered "10 THC cartridges on three occasions and 5 THC edibles" to a friend who was working as a police informant.

Walton eventually pleaded guilty to six felony offenses. In Collin County on August 18, 2020, he pleaded guilty to two counts of manufacture/delivery of a Penalty Group 2 or 2-A controlled substance in the amount of over 400 grams. In Denton County on August 27, 2020, he pleaded guilty to four counts of possession of a controlled substance with intent to deliver. On all counts in both counties, adjudication was deferred and Walton was placed on six years of community supervision. Walton did not inform the Commission of these guilty pleas within thirty days of their entry.

In November 2020, Walton submitted an application for renewal after his first two years of being licensed. He submitted a "Background History Form" to Staff in which he disclosed his deferred-adjudication orders and included a written statement about the nature of his offenses.

The Commission opened a complaint file on December 10, 2020, requesting information about these offenses. Walton provided some, but not all, of the requested information on December 23, 2020. He emailed Staff on January 10, 2021, explaining that he had requested that his community-supervision officer provide additional documents for the Collin County offenses. By January 21, 2021, Walton had provided all but two requested documents and provided photographs of the conditions of supervision in Collin County. On March 17, 2021, Staff informed Walton of its petition to revoke his license and seek an administrative penalty totaling $3,500. Staff said the financial penalty was calculated as the minimum penalty of $500 for failing to report the guilty plea on each felony and a $500 penalty for failing to timely provide requested information.

2

A hearing was held before an administrative law judge (ALJ) from the State Office of Administrative Hearings (SOAH). A second ALJ later listened to a recording of the hearing and filed a proposal for decision (PFD) including proposed findings of fact, conclusions of law, and penalties. The ALJ found that the felony offenses are serious, that Walton had not completed his community supervision, and that Walton was 31 years old when he committed the offense so it was not a "youthful indiscretion." The ALJ also found that Walton had steady employment since 2012, that approximately two years and eight months had passed since the offenses, that he had complied with the terms of his supervision, and that he demonstrated rehabilitation or rehabilitative effort through completing community-service hours, submission to drug testing, completion of a drug-education course, and payment of all outstanding court costs and fees. The ALJ further found that Walton did not use his license to commit the offenses and would not have the opportunity to engage in similar criminal activity if granted a license. The ALJ found that Walton's failure to report the deferred-adjudication orders was based on Walton's misunderstanding of the Commission's rules and that he tried to correct that failure once aware. The ALJ found that he fully disclosed his offenses on the background history form he submitted to the Commission in November 2020 and that he attempted to provide the Commission with additional information in a reasonable time despite the Commission requesting numerous governmental documents by Christmas Eve 2020.

The ALJ found that Walton sufficiently established his honesty, trustworthiness, and integrity to be licensed. The ALJ concluded that, though Walton's offenses are by rule directly related to the occupation of a real-estate sales agent, he did not pose a threat to public safety; that his employment as an agent would not create a situation in which he had the opportunity to repeat the prohibited conduct; and that the Commission should not treat his deferred adjudication as a

3

conviction. The ALJ also concluded that Walton did not fail to provide the Commission additional information within 14 days or a reasonable time of the Commission's request. The ALJ concluded that the Commission should not revoke Walton's license, but should impose an administrative penalty of $3,000 for failing to notify the Commission of the offenses within 30 days of his pleas of guilty.

The Commission amended the findings, conclusions, and penalties proposed in the PFD after determining that the ALJ did not properly apply or interpret applicable law. The Commission noted that Walton was still attempting to provide information six weeks after the Commission's initial request. The Commission also determined that the ALJ failed to properly apply and weigh statutory and rule-based factors in finding that Walton did not pose a continued threat to public safety and in finding that Walton had the requisite honesty, trustworthiness, and integrity to be licensed. Similarly, the Commission revised the ALJ's proposed conclusions to provide that Walton poses a continued threat to public safety, that the Commission can treat his deferred-adjudication orders as convictions, that Walton failed to provide the Commission additional information in a reasonable time, that Walton failed to establish his fitness to hold a license, and that Walton's license should be revoked. The Commission increased the recommended administrative penalty to $3,500.

On appeal, Walton challenges only a finding and conclusions relevant to the revocation of his license.

## STANDARD OF REVIEW

When reviewing a final agency order, we use the substantial-evidence rule which requires that we reverse or remand a case if the administrative findings, inferences, conclusions,

4

or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence; or (F) arbitrary or capricious or characterized by abuse of discretion. Tex. Gov't Code § 2001.174. Whether the Commission's order satisfies the substantial-evidence standard is a question of law. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). On appeal from the trial court's judgment, the focus of the appellate court's review is the Commission's decision. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000). Thus, the trial court's judgment is not entitled to deference on appeal. *Texas Dep't of Pub. Safety v. Alford*, 209 S.W.3d 101, 103 (Tex. 2006) (per curiam).

A substantial-evidence analysis comprises two inquiries: (1) whether the agency made findings of underlying facts that logically support the ultimate facts and legal conclusions that are the ultimate basis for the order, and (2) whether the findings of underlying facts are reasonably supported by evidence. *See Vista Med. Ctr. Hosp. v. Texas Mut. Ins. Co.*, 416 S.W.3d 11, 26–27 (Tex. App.—Austin 2013, no pet.). The first inquiry, concerning the extent to which the underlying facts found by the Commission logically support its ultimate decision or action, may entail questions of law that we review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). The second inquiry is highly deferential to the Commission's determination. *Slay v. Texas Comm'n on Env't Quality*, 351 S.W.3d 532, 549 (Tex. App.—Austin 2011, pet. denied). "'Substantial evidence' does not mean a large or considerable amount of evidence"—in fact, the evidence may even preponderate against the agency's finding—but requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *Id*.

5

Walton contends that the Commission's order is improper because the Commission's amendments to the ALJ's PFD are not permitted by Texas Government Code Section 2001.058(e) and are not reasonably supported by substantial evidence.

## I. The Commission sufficiently articulated a legal basis for its amendments.

The finding and conclusions that the Commission changed concern whether Walton proved himself qualified for a license.

### A. Crimes can affect licensing decisions.

To receive a real-estate license, an applicant must satisfy the Commission of the applicant's honesty, trustworthiness, and integrity. Tex. Occ. Code § 1101.354(2). The Commission may suspend or revoke a real-estate license if the license holder enters a plea of guilty to a felony and the time for appeal has lapsed without regard to whether an order granting community supervision suspended the imposition of the sentence. *Id.* § 1101.652(a)(1). An agency may deny an application for a license if the applicant has committed any crime that "directly relates to the duties and responsibilities of the licensed occupation." *Id.* § 53.021(a)(1). An agency can treat a person who has not yet completed a term of community supervision for an offense as having been convicted of the offense, if, after considering various statutory factors under Occupations Code sections 53.022 and 53.023, the Commission concludes that the person may pose a continued threat to public safety. *Id.* § 53.021(d)(1)(B)(i), (2).[1] Crimes deemed relevant

---

[1] The statutory factors in determining whether a conviction relates to the duties and responsibilities of the occupation include the nature and seriousness of the crime; the relationship of the crime to the purposes for requiring a license to engage in the occupation; the extent to which

to show a continued threat include felonies involving the manufacture, delivery, or intent to deliver controlled substances and repeated violations of one criminal statute or multiple violations of different criminal statutes. 22 Tex. Admin. Code § 541.1(a)(11), (14) (2022) (Tex. Real Estate Comm'n, Criminal Offense Guidelines). In determining whether a person with a criminal conviction that directly relates to an occupation is fit to hold a license, the Commission must consider the factors listed in Occupations Code Section 53.023(a). These factors include the extent and nature of past criminal activity, age at the time of the crime, time elapsed since the last criminal activity, conduct and work activity before and after the criminal activity, evidence of rehabilitation or rehabilitative effort, compliance with community supervision, and other evidence of fitness including letters of recommendation. Tex. Occ. Code § 53.023(a); *see also* 22 Tex. Admin. Code § 541.1(d).

## B. The Commission's power to change an ALJ's findings or conclusions is limited.

Section 2001.058(e) permits a state agency to change an ALJ's finding of fact or conclusion of law only if the agency determines: (1) the ALJ did not properly apply or interpret applicable law, agency rules, or prior administrative decisions; (2) a prior administrative decision on which the ALJ relied is incorrect or should be changed; or (3) a technical error in a finding of fact should be changed. Tex. Gov't Code § 2001.058(e). The agency must state in writing the specific reason and legal basis for any change. *Id.*; *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 780–81 (Tex. App.—Austin 2005, no pet.); *see Garcia v. Texas Real Est. Comm'n*,

---

a license might offer an opportunity to engage in further criminal activity of the same type as that in which the person previously had been involved; the relationship of the crime to the ability or capacity required to perform the duties and discharge the responsibilities of the licensed occupation; and any correlation between the elements of the crime and the duties and responsibilities of the licensed occupation. Tex. Occ. Code § 53.022.

No. 03-14-00349-CV, 2016 WL 3068408, at *3 (Tex. App.—Austin May 27, 2016, no pet.) (mem. op.). The Commission must "articulate a rational connection between an underlying agency policy and the altered finding of fact or conclusion of law." *Levy v. Texas State Bd. of Med. Exam'rs*, 966 S.W.2d 813, 815 (Tex. App.—Austin 1998, no pet.).

An ALJ is a "disinterested hearing officer" to whom the legislature has delegated the duty of basic fact-finding. *See Flores v. Employees Ret. Sys.*, 74 S.W.3d 532, 539-40 (Tex. App.—Austin 2002, pet. denied). The ALJ is the sole judge of witness credibility. *Granek*, 172 S.W.3d at 778. An agency cannot frustrate the delegation of the fact-finding role by ignoring an ALJ's "findings with which it disagrees and substitut[ing] its own additional findings." *Davis*, 34 S.W.3d at 564. However, "[j]ust because the Commission modifies or rejects an ALJ's finding or conclusion does not mean the ALJ was not an independent trier-of-fact." *Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 755 (Tex. App.—Austin 2006, pet. denied).

ALJs consider adjudicative and ultimate findings of fact, the latter of which are sometimes mixed with questions of law. Adjudicative facts are often the subject of conflicting evidence, which are more appropriately resolved by the ALJ, who is better suited than an agency or board in determining how much weight to give each side's evidence and better suited to make credibility determinations. *See Hyundai Motor Am. v. New World Car Nissan, Inc.*, 581 S.W.3d 831, 838 (Tex. App.—Austin 2019, no pet.). Legislative or ultimate facts "do not usually concern the immediate parties but are the general facts that help the tribunal decide questions of law and policy and discretion." *Hyundai*, 581 S.W.3d at 838. "A finding of ultimate fact is reached by inference from basic facts." *West Tex. Utils. Co. v. Office of Pub. Util. Counsel*, 896 S.W.2d 261, 270 (Tex. App.—Austin 1995, no writ). A finding of ultimate fact "usually involves 'a conclusion of law or at least a determination of a mixed question of law and fact.'" *Hunter Indus. Facilities,*

8

*Inc. v. Texas Nat. Res. Conservation Comm'n*, 910 S.W.2d 96, 104 (Tex. App.—Austin 1995, writ denied) (quoting *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491 (1937)). Therefore, an ultimate finding pertaining to compliance with a statutory standard, when that determination is statutorily within the discretion of an agency, has the same legal effect as a conclusion of law. *Hyundai*, 581 S.W.3d at 838 (citing *Hunter*, 910 S.W.2d at 104-05). When reviewing an agency's findings of ultimate fact, a reviewing court is "limited to the inquiry of whether the agency's findings of basic fact reasonably support its findings of ultimate fact." *Professional Mobile Home Transp. v. Railroad Comm'n of Tex.*, 733 S.W.2d 892, 899 (Tex. App.—Austin 1987, writ ref'd n.r.e.).

An agency has broad discretion in determining which sanction available to it best serves the statutory policies the agency is mandated to oversee. *Melmat, Inc. v. Texas Alcoholic Beverage Comm'n*, 362 S.W.3d 211, 219 (Tex. App.—Dallas 2012, no pet.). An agency's determination of an appropriate penalty should not be reversed unless there was a clear abuse of discretion in the imposition of such penalty. *Fay-Ray Corp. v. Texas Alcoholic Beverage Comm'n*, 959 S.W.2d 362, 369 (Tex. App.—Austin 1998, no pet.). Any recommendation of a penalty by the ALJ is purely a recommendation and is not binding on the Commission. *See* 22 Tex. Admin. Code § 533.7(a) (2022) (Tex. Real Estate Comm'n, Final Decisions and Orders). However, when the Commission adds a suspension in an exercise of its discretion to adjust the sanction, it must comply with section 2001.058(e) by providing a "specific reason and legal basis" for rejection of an ALJ's proposal. *Garcia*, 2016 WL 3068408, at *8 (citing *Froemming v. Texas State Bd. of Dental Exam'rs*, 380 S.W.3d 787, 792 (Tex. App.—Austin 2012, no pet.); *Pierce*, 212 S.W.3d at 755; and *Granek*, 172 S.W.3d at 781).

9

C.   **The Commission's explanations of its changes are sufficient.**

To argue the inadequacy of the Commission's justifications for its amendment of the ALJ's proposal, Walton commendably concedes that the Commission adequately explained the basis for changing findings of fact underlying the original Conclusion of Law 11[2] ["Mr. Walton did not fail to provide the Commission additional information within 14 days or a reasonable time of the Commission's request."].  The Commission explained:

> For purposes of these sections, Rule § 535.142(e)(3) defines "a reasonable time" to mean 14 days from receipt of a request made by Commission staff.  The evidence is clear that as late as six weeks after the Commission's request, Respondent had still not provided all of the requested information.  An attempt to provide information is not the equivalent of actually providing the information and the plain language of the Commission rule does not contemplate it.  As a result, the Commission strikes Findings of Fact 7 and 8 as listed in the Proposal for Decision, replaces them as follows, and renumbers accordingly:
>
> > 7.  On January 10, 2021, Mr. Walton emailed Staff explaining that he had requested that his community supervision officer provide additional documents for his Collin County offenses.
> >
> > 8.  As late as January 21, 2021, Mr. Walton had not fully complied with the Commission's request for information.

These unchallenged amended findings are supported by the record and support the Commission's amendment to the original Conclusion of Law 11 to provide, "Respondent failed to provide the Commission additional information requested by the Commission in a reasonable time.  Tex. Occ. Code § 1101.652(a)(4)."  The Commission asserts that this explanation—particularly its reliance on the rule's definition of 14 days as "reasonable" and the statement that an attempt to provide information is not the required provision of information—meets the Commission's statutory

---

[2]   We note that the Commission's "renumbering" as described in its order lists two Conclusions of Law 11.

burden to explain its modification and provide a rational connection between an underlying agency policy and the altered finding or conclusion. *See* Tex. Gov't Code § 2001.058(e); *Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 515 (Tex. App.—Austin 2007, no pet.).

Walton contends, however, that the Commission did not adequately explain its changes to Finding of Fact 27 and Conclusions of Law 7, 9, 10, and 11. In amending the ALJ's Finding of Fact 27 ("Mr. Walton has sufficiently established his honesty, trustworthiness, and integrity to be licensed at this time"), the Commission stated:

> Section 1101.354(2), Occupations Code, requires that a person must satisfy the Commission as to their honesty, trustworthiness, and integrity to be eligible for licensure. To determine Respondent's fitness to hold a license, Texas Occupations Code §§ 53.021, 53.022, 53.023, and 22 T.A.C. § 541.1 must be considered.
>
> The ALJ failed to properly apply or interpret the law as set forth in Tex. Occ. Code §§ 53.021, 53.022, 53.023, and 22 T.A.C. § 541.1 based on the evidence presented. In analyzing the factors listed in § 53.023(a), Occupations Code, and 22 T.A.C. § 541.1(d), the ALJ found that Respondent's criminal offenses were serious: he pleaded guilty to six felony offenses. The ALJ also found that Respondent's criminal offenses were recent and not attributable to youthful indiscretion: he committed these offenses when he was 31, just three years ago. In analyzing the remaining factors, the ALJ determined that these factors outweighed the seriousness and recency of Respondent's criminal offenses and that Respondent was fit to hold a license. However, the evidence shows that the remaining factors do not support such a finding and that the ALJ gave disproportionate weight to Respondent's conduct and self-employment, compliance with terms of his community supervision (which remains ongoing until August 26, 2026), and his three letters of recommendation (only one of which-written by a friend references his criminal history).
>
> These findings and evidence clearly demonstrate that the ALJ failed to properly apply the law and that Respondent lacks the requisite honesty, trustworthiness, and integrity required for a license. As a result, the Commission strikes Finding of Fact 27 as listed in the Proposal for Decision, replaces it as follows and renumbers accordingly:
>
>> 27. Mr. Walton has not overcome the evidence that he lacks the requisite honesty, trustworthiness, and integrity to hold a real estate license at this time.

In amending the challenged conclusions, the Commission wrote:

The ALJ misapplied the law in Conclusion of Law 7 ["Mr. Walton does not pose a threat to public safety"] as stated above. Respondent's criminal offenses are serious in nature. He pleaded guilty to six felony offenses. He committed these offenses when he was 31, just under three years ago. While Respondent appears to be generally complying with the terms of his community supervision, the seriousness and recency of these offenses mean that he poses a continued threat to public safety. As a result, the Commission strikes Conclusion of Law 7 as listed in the Proposal for Decision, replaces it as follows, and renumbers accordingly:

7. Mr. Walton poses a continued threat to public safety.

Based on amended Conclusion of Law 7, the conclusion ["9. For purposes of determining his eligibility and fitness to hold a license, the Commission should not treat Mr. Walton's deferred adjudication as a conviction. Code §§ 53.021(d), 53.022, and 53.023(a)"] that Respondent's deferred adjudications for six recent felony offenses should not be treated as convictions is a misapplication of the law. As a result, the Commission strikes Conclusion of Law 9, replaces it as follows, and renumbers accordingly:

9. For purposes of determining his eligibility and fitness to hold a license, the Commission may treat Mr. Walton's six orders of deferred adjudication as six convictions. Tex. Occ. Code §§ 53.021 (d); 53.022, and 53.023(a).

Based on the properly amended findings of fact and conclusions of law, Respondent has failed to establish that he is fit to hold a real estate sales agent license. As a result, the Commission strikes Conclusion of Law 10 ["The Commission should not revoke Mr. Walton's license pursuant to Code § 110l.652(a)(l)."], replaces it with the following conclusions of law, and renumbers accordingly:

10. Respondent has failed to establish that he is fit to hold a real estate sales agent license. Tex. Occ. Code §§ 53.022-.023; 22 Tex. Admin. Code § 541.1 (a)-(d).

11 . Mr. Walton's license should be revoked pursuant to Tex. Occ. Code §§ 1101.354(2) and 1101.652(a)(1); Tex. Occ. Code §§ 53.021 (d); 53.022, and 53.023(a); and 22 T.A.C. §541.1(a)(11) and (14).

Walton contends that, unlike the explanation for amending Findings of Fact 7 and 8, these

explanations are conclusory, do not articulate specific reasons or legal bases for rejecting the ALJ's

proposal, do not identify relevant agency policy, and does not articulate a rational connection between underlying policy and the amendments.

We conclude that, on the record presented, the Commission's explanations are minimally adequate to justify the amendments. Finding of Fact 27 is not like the objective findings, such as that regarding the existence of the convictions, but instead is an assessment of the accumulated found facts like the nature of the convictions and rehabilitation efforts against a statutory framework to conclude whether Walton has met his burden to show the Commission that he has sufficient "honesty, trustworthiness, and integrity" to merit a license. *See* Tex. Occ. Code § 1101.354(2). In assessing Finding 27 and Conclusion 7, the Commission relies on the ALJ's factual findings regarding the seriousness and recency of Walton's convictions, his maturity when committing them, and his steps toward rehabilitation. The Commission's rejection of the ALJ's relative weight assigned to those factors expresses the Commission's policy to deem the commission of multiple recent felonies as more contrary to the required honesty, trustworthiness, and integrity and threatening to public safety than the pending terms of rehabilitative supervision, employment, and recommendation of friends could redeem. While the Commission could have expanded its explanation of why it assigned more weight to Walton's commission of the felonies than his redemption, the Commission's emphasis on the seriousness and recency of the felonies provided an adequately rational connection between an underlying agency policy and the altered finding or conclusion. *See* Tex. Gov't Code § 2001.058(e); *Sanchez*, 229 S.W.3d at 515.

This case is distinct from cases in which courts have found the agency's explanations insufficient. *See Levy*, 966 S.W.2d at 816; *Texas Real Est. Comm'n v. Riekers*, No. 14-18-00287-CV, 2020 WL 1026478 (Tex. App.—Houston [14th Dist.] Mar. 3, 2020, no pet.) (mem. op.); *Garcia*, 2016 WL 3068408.

13

In *Levy*, this Court rejected an agency board's general statement of law as too generic to support amendment of several findings, conclusions and orders. *Levy*, 966 S.W.2d at 816. The board wrote:

> The Texas Board of Medical Examiners finds that the findings of fact and conclusions of law, and the proposed Order by the Administrative Law Judge are against the weight of the evidence, based on unsound medical principles, and are not sufficient to protect public interest and upon such findings it is the policy of the Board to change findings of fact, and conclusions of law or to vacate or modify the proposed order of an administrative law judge.

*Id.* This Court held that the agency failed to give reasons why each finding was against the weight of the evidence, etc., and did not explain specific reasons for each individual change. *Id.* In this case, the Commission gave more explanation—particularly as to Finding of Fact 27 and Conclusion of Law 7 as set out above. While the explanations for changes to Conclusions of Law 9, 10, and 11, refer to and rely on the amendment of Conclusion of Law 7, the logical connection of the reasoning for changing Conclusion of Law 7 to the changing of the other conclusions is readily apparent. The Commission explained that the amendment of Conclusion of Law 7 to conclude that Walton may pose a continued threat to public safety (rather than that he does not) affects the weight of the factors in assessing whether to treat the deferred-adjudication orders as convictions in Conclusion of Law 9. It further explains that these amendments similarly undermine Conclusion of Law 10 that Walton had established his fitness to hold a license, necessitating amendment to conclude the opposite and that Walton's license should be revoked in Conclusion of Law 10 and new Conclusion of Law 11. We hold that the Commission's explanation that it weighs the seriousness and recency of the offenses more heavily than the rehabilitation efforts and character references, while barebones, is sufficiently specific to support the amended

Finding of Fact 27 and Conclusion of Law 7 as well as the amendments that necessarily follow in Conclusions of Law 9, 10, and 11.

In *Riekers*, the Fourteenth Court of Appeals rejected the Commission's amendment of findings and conclusions as inadequate. The court held that the Commission added findings of fact that were not supported by the record, then reached conclusions based on those unfounded amended findings. *See* 2020 WL 1026478 at *6, *11. The court held that the Commission simply recited aspects of the record, then found that "the ALJ did not properly apply or interpret the Commission's authority to discipline a license holder and probate a revocation." *Id.* at *6. The court concluded that the Commission based its modification of the penalty proposed almost entirely on the fact that it has the power to impose sanctions and made no reference to the factors weighed under 22 Texas Administrative Code Section 541.1(b)-(c). *See id.* at *11-12. The Fourteenth Court held that the Commission must explain the basis for the change in penalty from the ALJ's recommendation. *Id.* at *11. Concluding that the Commission relied on facts not supported by the evidence and provided no or insufficient factual or legal basis for its modifications, the court reversed the Commission's order. *Id.* In Walton's case, however, the Commission did not make unfounded new fact-findings and did refer to the factors to be weighed under section 541, which refers to the Occupations Code chapter 53. The Commission's factual basis for and explanation of its amendments are more substantial than those rejected in *Riekers*.

This Court's reversal of the Commission's modification of a sanction in *Garcia* is similarly distinct. *Garcia*, 2016 WL 3068408, at *3. In its order in *Garcia*, the Commission added a license suspension to the ALJ's recommended financial penalty. *Id.* at *1. Critically, however, the Commission did not change an underlying finding of fact that the financial penalty "would reflect the seriousness of the violation and deter future violations." *Id.* at *3. This Court also

15

concluded that the Commission offered no discussion of Garcia's conduct and its serious nature, no explanation of why or how the recommended sanction did not address the seriousness of the violations, and no explanation of statutory authority or articulation of policy as the legal basis for modifying the sanction assessed. *Id.* at \*3-4. By contrast, the Commission's order in this case does not conflict with an unchallenged, unamended finding of fact, discusses the seriousness of Walton's actions, and explains that the Commission considers the seriousness of the offenses as more compelling than the partial completion of the community supervision and continued gainful employment. Further, this Court noted in *Garcia* that the Commission "offered no discussion of Garcia's conduct and its serious nature," *id.* at \*3, whereas here the Commission agreed with the ALJ's finding of the conduct's seriousness and emphasized that by concluding that it outweighed Walton's work history, supervision compliance, rehabilitation, and recommendations. Whereas the Commission in *Garcia* "failed to explain its statutory authority or articulate any policy, statutory provision, or Commission rule as the legal basis for modifying the sanction assessed," *id.* at \*4, the Commission in this case cited the factors in Occupations Code Sections 53.021, .022, and .023 along with 22 Texas Administrative Code Section 541.1 as guiding its assessment of Walton's satisfaction of his burden under Occupations Code Section 1101.354(2) to prove that he has the honesty, trustworthiness, and integrity to be eligible for licensure.

The Commission provided in writing a sufficiently specific reason and legal basis explaining how the ALJ did not properly apply or interpret applicable law and giving the reason for changing the finding and conclusions amended. *See* Tex. Gov't Code § 2001.058(e). It did not change them simply because it disagreed with them. The Commission did not violate the statute and acted within its mandate. *See id.* § 2001.174(A), (B). Its ruling was not made through

16

unlawful procedure and is not affected by other error of law. *See id.* § 2001.174(C), (D). We overrule point of error one.

## II. The Commission's changes are supported by substantial evidence and are not arbitrary, capricious, or abusive of its discretion.

Walton recites a series of unchallenged findings of fact made by the ALJ and argues that the ALJ, as the sole judge of witness credibility, was in a superior position to make those assessments.[3] *See Granek*, 172 S.W.3d at 778. He contends that the Commission did not identify any Occupations Code Chapter 53 factor that the ALJ improperly considered and that the Commission therefore had no legitimate basis to change any of the ALJ's findings or conclusions. He notes particularly the ALJ's assessment of Walton's assertions that

> he was not hiding from his past criminal actions and that he understands he will be held accountable for those past actions. He admitted to wrongdoing and stated that he hopes to prove that he is an honest person worthy of holding a real estate license. The ALJ found that Mr. Walton's testimony concerning his acceptance of his past mistakes and willingness to learn was authentic and weighed in favor of his rehabilitation.

---

[3] Walton cites these findings:

- Mr. Walton's criminal offenses relate to his possession and intent to deliver marijuana-based products in October 2018 and January 2019. He has no other criminal history.
- Mr. Walton did not use his real estate sales agent license to commit the drug related offenses and would not have the opportunity to engage in similar criminal activity if granted a license.
- The evidence shows that Mr. Walton has complied with the terms of his community supervision, which will expire in 2026.
- Mr. Walton demonstrated his rehabilitation or rehabilitative effort through completion of his community service hours, submission to drug testing, completion of a drug education course, and payment of all outstanding court costs and fees.
- The letters of support provided by Mr. Walton reflect his present fitness to perform the duties of a real estate sales agent.
- Mr. Walton has sufficiently established his honesty, trustworthiness, and integrity to be licensed at this time.

Walton argues that the Commission was not in a reasonable position to judge his credibility because the Commission was not present at the hearing and did not indicate that it directly reviewed the recorded testimony and admitted exhibits. He contends that the Commission's order accordingly is not supported by substantial evidence or is arbitrary, capricious, or characterized by abuse of discretion or a clearly unwarranted exercise of discretion. *See* Tex. Gov't Code § 2001.174(2)(E), (F).

But the Commission's amendments did not rest on a reassessment of the credibility of Walton or any witness or evidence. The Commission referred to findings made by the ALJ on the extent and nature of Walton's criminal activity, his age when they were committed, the time elapsed since that criminal activity, his work activity, his rehabilitation or rehabilitative efforts, his compliance with community-supervision conditions, and his recommendation letters—all of which are factors under Texas Occupations Code Section 53.022-.023 and 22 Tex. Admin. Code Section 541.1. Based on those findings, the Commission concluded that—contrary to the ALJ's assessment—the seriousness and recency of the offenses outweighed Walton's subsequent conduct, employment, compliance with community-supervision conditions, and recommendations and showed that Walton poses a continued threat to public safety. The Commission did not reassess the ALJ's factual findings but changed the ALJ's proposal based on the weight the Commission accorded to those findings to achieve its policy aim of protecting the public from threats.

The amendments here pertain not to what facts Walton showed or whether he should be sanctioned, but how severe the sanction should be. An agency has broad discretion in determining which sanction available to it best serves the statutory policies the agency is mandated to oversee. *Melmat*, 362 S.W.3d at 219. We review agency decisions not for whether they are right

18

but whether they are reasonable. *City of El Paso v. Public Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994). "The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." *Id.* We conclude that the unchallenged underlying findings of fact provide a reasonable basis for the Commission's action in amending the finding and conclusions challenged here. The Commission's order is supported by substantial evidence and is not arbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *See* Tex. Gov't Code § 2001.174(2)(E), (F).

We overrule point of error two.

## CONCLUSION

Having overruled the points of error presented, we affirm the trial court's judgment affirming the Commission.

_____
Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed: November 26, 2024

19